## WARDIUS v. OREGON

No. 71-6042. Argued January 10, 1973—Decided June 11, 1973

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, STEWART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BURGER, C. J., concurred in the result. DOUGLAS, J., filed an opinion concurring in the result, *post*, p. 479.

*J. Marvin Kuhn* argued the cause and filed a brief for petitioner.

*W. Michael Gillette*, Assistant Attorney General of Oregon, argued the cause for respondent. With him on the briefs were *Lee Johnson*, Attorney General, *John W. Osburn*, Solicitor General, and *John H. Clough*, Assistant Attorney General.*

---

*\*Jerome B. Falk, Jr.*, filed a brief for Virgil Jenkins as *amicus curiae* urging reversal.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

This case involves important questions concerning the right of a defendant forced to comply with a "notice-of-alibi" rule to reciprocal discovery.

In *Williams* v. *Florida,* 399 U. S. 78 (1970), we upheld the constitutionality of Florida's notice-of-alibi rule which required criminal defendants intending to rely on an alibi defense to notify the prosecution of the place at which they claimed to be at the time in question, and of the names and addresses of witnesses they intended to call in support of the alibi.[1] In so holding, however, we emphasized that the constitutionality of such rules might depend on "whether the defendant enjoys reciprocal discovery against the State." *Id.,* at 82 n. 11.[2]

In the case presently before us, Oregon prevented a criminal defendant from introducing any evidence to support his alibi defense as a sanction for his failure to comply with a notice-of-alibi rule which, on its face,

---

[1] The requirement was attacked as a violation of the defendant's due process right to a fair trial and an invasion of his privilege against self-incriminaton. But the Court found that "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." 399 U. S., at 81. Moreover, we held that "the privilege against self-incrimination is not violated by a requirement that the defendant give notice of an alibi defense and disclose his alibi witnesses." *Id.,* at 83.

[2] The Florida rule provided:

" 'Not less than five days after receipt of defendant's witness list, or such other times as the court may direct, the prosecuting attorney shall file and serve upon the defendant the names and addresses (as particularly as are known to the prosecuting attorney) of the witnesses the State proposes to offer in rebuttal to discredit the defendant's alibi at the trial of the cause.' " See 399 U. S., at 104.

made no provision for reciprocal discovery.[3] The case thus squarely presents the question left open in *Williams,* and we granted certiorari so that this question could be resolved. 406 U. S. 957 (1972).

We hold that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants. Since the Oregon statute did not provide for reciprocal discovery, it was error for the court below to enforce it against petitioner, and his conviction must be reversed.[4]

## I

On May 22, 1970, petitioner was indicted under Ore. Rev. Stat. § 474.020 for unlawful sale of narcotics. The sale allegedly occurred the previous day. At trial, after the State had concluded its case, petitioner called one

---

[3] Ore. Rev. Stat. § 135.875 provides:

"(1) If the defendant in a criminal action proposes to rely in any way on alibi evidence, he shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of his purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, he shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise.

"(2) As used in this section, 'alibi evidence' means evidence that the defendant in a criminal action was, at the time of commission of the alleged offense, at a place other than the place where such offense was committed."

[4] Petitioner also argues that even if Oregon's notice-of-alibi rule were valid, it could not be enforced by excluding either his own testimony or the testimony of supporting witnesses at trial. But in light of our holding that Oregon's rule is facially invalid, we express no view as to whether a valid rule could be so enforced. Cf. *Williams* v. *Florida, supra,* at 83 n. 14.

Colleen McFadden who testified that on the night in question, she had been with petitioner at a drive-in movie. The prosecutor thereupon brought to the judge's attention petitioner's failure to file a notice of alibi, and after hearing argument the trial judge granted the State's motion to strike McFadden's testimony because of this failure. Petitioner himself then took the stand and attempted to testify that he was at the drive-in with McFadden at the time when the State alleged the sale occurred. Once again, however, the State objected and the trial judge again refused to permit the evidence.

Petitioner was convicted as charged and sentenced to 18 months' imprisonment. On appeal, the Oregon Court of Appeals rejected petitioner's contentions that the Oregon statute was unconstitutional in the absence of reciprocal discovery rights and that the exclusion sanction abridged his right to testify in his own behalf and his right to compulsory process. 6 Ore. App. 391, 487 P. 2d 1380 (1971). In an unreported order, the Oregon Supreme Court denied petitioner's petition to review. See App. 21.

## II

Notice-of-alibi rules, now in use in a large and growing number of States,[5] are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. See, e. g., Brennan, The Criminal Prosecution: Sporting Event or Quest for Truth?, 1963 Wash. U. L. Q. 279; American Bar Association Project on Standards for Criminal Justice, Discovery and Procedure Before

---

[5] See Id., at 82 n. 11; Note, The Preclusion Sanction—A Violation of the Constitutional Right to Present a Defense, 81 Yale L. J. 1342 n. 4 (1972).

Trial 23–43 (Approved Draft 1970); Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L. J. 1149 (1960). The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in *Williams*, nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence." 399 U. S., at 82 (footnote omitted).

Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, but cf. *Brady* v. *Maryland*, 373 U. S. 83 (1963), it does speak to the balance of forces between the accused and his accuser. Cf. *In re Winship*, 397 U. S. 358, 361–364 (1970).[6] The *Williams* Court was therefore careful to note that "Florida law provides for liberal discovery by the defendant against the State, and the notice-of-alibi rule is itself carefully hedged with reciprocal duties requiring state disclosure to the defend-

---

[6] This Court has therefore been particularly suspicious of state trial rules which provide nonreciprocal benefits to the State when the lack of reciprocity interferes with the defendant's ability to secure a fair trial. See, *e. g.*, *Washington* v. *Texas*, 388 U. S. 14, 22 (1967); *Gideon* v. *Wainwright*, 372 U. S. 335, 344 (1963). Cf. Goldstein, The State and the Accused: Balance of Advantage in Criminal Procedure, 69 Yale L. J. 1149, 1180–1192 (1960).

ant." 399 U. S., at 81 (footnote omitted). The same cannot be said of Oregon law. As the State conceded at oral argument, see Tr. of Oral Arg. 19, Oregon grants no discovery rights to criminal defendants, and, indeed, does not even provide defendants with bills of particulars.[7] More significantly, Oregon, unlike Florida, has no provision which requires the State to reveal the names and addresses of witnesses it plans to use to refute an alibi defense.[8]

We do not suggest that the Due Process Clause of its own force requires Oregon to adopt such provisions. Cf. *United States* v. *Augenblick,* 393 U. S. 348 (1969); *Cicenia* v. *Lagay,* 357 U. S. 504 (1958). But we do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses.[9]

---

[7] As the Oregon Court of Appeals has recently pointed out, "Oregon's criminal code is almost completely lacking in pretrial discovery procedures." *State* v. *Kelsaw,* 289 Ore. App. 295, 502 P. 2d 278, 280–281 (1972), pet. for cert. pending, No. 72–6012.

[8] The only discovery rights Oregon appears to permit are the rights to view written statements made by state witnesses and by the defendant, in the hands of the police. See *State* v. *Foster,* 242 Ore. 101, 407 P. 2d 901 (1965); Ore. Rev. Stat. §§ 133.750, 133.755. Cf. *State* v. *Kelsaw, supra.*

[9] Indeed, the State's inherent information-gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor. As one commentator has noted:

"Besides greater financial and staff resources with which to investigate and scientifically analyze evidence, the prosecutor has a number of tactical advantages. First, he begins his investigation shortly after the crime has been committed when physical evidence is more likely to be found and when witnesses are more apt to remember events. Only after the prosecutor has gathered sufficient evidence is the defendant informed of the charges against him; by

It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

Indeed, neither the respondent nor the Oregon Court of Appeals contests these principles. Nor does the State suggest any significant governmental interests which might support the lack of reciprocity. Instead, respondent has chosen to rest its case on a procedural point. While conceding that Oregon law fails to provide for reciprocal discovery on its face, the State contends that if petitioner had given notice of his alibi defense, the state courts might have read the Oregon statute as requiring the State to give the petitioner the names and addresses of state witnesses used to refute the alibi defense. Since petitioner failed to give notice, his alibi defense was not permitted and there were, therefore, no state rebuttal witnesses whose testimony tended to disprove the alibi. Since no such testimony was intro-

---

the time the defendant or his attorney begins any investigation into the facts of the case, the trail is not only cold, but a diligent prosecutor will have removed much of the evidence from the field. In addition to the advantage of timing, the prosecutor may compel people, including the defendant, to cooperate. The defendant may be questioned within limits, and if arrested his person may be searched. He may also be compelled to participate in various non-testimonial identification procedures. The prosecutor may force third persons to cooperate through the use of grand juries and may issue subpoenas requiring appearance before prosecutorial investigatory boards. With probable cause the police may search private areas and seize evidence and may tap telephone conversations. They may use undercover agents and have access to vast amounts of information in government files. Finally, respect for government authority will cause many people to cooperate with the police or prosecutor voluntarily when they might not cooperate with the defendant." Note, Prosecutorial Discovery under Proposed Rule 16, 85 Harv. L. Rev. 994, 1018–1019 (1972) (footnotes omitted).

duced, respondent argues that Oregon's willingness to permit reciprocal discovery remains untested. The State says, in effect, that petitioner should not be permitted to litigate the reciprocity issue in the abstract in federal court after bypassing an opportunity to contest the issue concretely before the state judiciary.[10]

It is, of course, true that the Oregon courts are the final arbiters of the State's own law, and we cannot predict what the state court might have done had it been faced with a defendant who had given the required notice of alibi and then sought reciprocal discovery rights. But it is this very lack of predictability which ultimately defeats the State's argument. At the time petitioner was forced to decide whether or not to reveal his alibi defense to the prosecution, he had to deal with the statute as written with no way of knowing how it might subsequently be interpreted. Nor could he retract the information once provided should it turn out later that the hoped-for reciprocal discovery rights were not granted.

For this reason, had petitioner challenged the lack of reciprocity by giving notice and then demanding discovery, he would have done so at considerable risk. To be sure, the state court might have construed the Oregon

---

[10] Before this Court, respondent presses the related argument that petitioner failed to object to the exclusion of his alibi testimony at trial and that his conviction therefore rests on an independent state procedural ground. See Brief for Respondent 5 n. 2. But, as the transcript makes clear, the issue arose when the trial court sustained the State's objection to introduction of the alibi testimony. Petitioner then proceeded to make an "offer of proof" in order to protect the record on appeal. Respondent cites us to no Oregon cases which would require petitioner to object to the sustaining of an objection in this context, and the state appellate court's willingness to reach the merits of petitioner's federal claims provides convincing proof that the judgment does not rest on adequate state grounds. See *Warden* v. *Hayden*, 387 U. S. 294, 297 n. 3 (1967).

statutes so as to save the constitutionality of the notice requirement and granted reciprocal discovery rights. But the state court would also have had the option of reading state law as precluding reciprocal discovery. If the court adopted this latter alternative, it would have had to strike down the notice-of-alibi requirement. But petitioner would have had only a Pyrrhic victory, since once having given the State his alibi information, he could not have retracted it. Thus, under this scenario, even though the notice-of-alibi rule would have been invalidated, the State would still have had the benefit of nonreciprocal discovery rights in petitioner's case—the very result which petitioner wishes to avoid by challenging the rule.

The statute as written did not provide for reciprocal discovery, and petitioner cannot be faulted for taking the legislature at its word.[11] Indeed, even at this stage of the proceedings, the respondent has made no representation that the State would in fact provide reciprocal discovery rights to a defendant who complied with the notice-of-alibi scheme. Respondent says only that the State *might* have granted such rights.[12] But the

---

[11] Nor did petitioner's attorney rest entirely on his own reading of Oregon's discovery provisions. As the attorney argued at trial,

"Several weeks ago this came up again—this came up in the Circuit Court here with Judge Perry, and Judge Perry allowed the alibi testimony in based upon [*Williams* v. *Florida*] and said that he at that time, based on our statute and based on this opinion, that he didn't feel that our criminal code and our statute should allow a substantive evidence [*sic*] that the defendant might have to be kept out due to this, and that is the reason that notice was not given. I relied somewhat upon that and my own interpretation of this case also." App. 6.

[12] The State cites us to *State* v. *Kelsaw, supra,* a recent Oregon Court of Appeals decision holding that a defendant must be given reciprocal information as to the time and place of the alleged offense before he can be required to comply with the notice-of-alibi rule. But

State cannot constitutionally force compliance with its scheme on the basis of a totally unsubstantiated possibility that the statute might be read in a manner contrary to its plain language. Thus, in the absence of fair notice that he would have an opportunity to discover the State's rebuttal witnesses, petitioner cannot be compelled to reveal his alibi defense.

Since the trial court erred and since there is a substantial possibility that its error may have infected the verdict, the conviction must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

THE CHIEF JUSTICE concurs in the result.

MR. JUSTICE DOUGLAS, concurring in the result.

In *Williams* v. *Florida*, 399 U. S. 78, 106, I joined Mr. Justice Black in dissent from that part of the Court's decision which upheld the constitutionality of Florida's "notice of alibi" rule. We concluded that the decision was "a radical and dangerous departure from the historical and constitutionally guaranteed right of a defendant in a criminal case to remain completely silent, requiring the State to prove its case without any assistance of any kind from the defendant himself." *Id.*, at 108. One need not go far for the textual support for this position. The Fifth Amendment, written with the inquisitorial practices of the Star Chamber firmly in mind, provides that "[n]o person . . . shall be compelled . . . to be a witness against himself." It seems

---

merely informing the defendant of the time and place of the crime does not approach the sort of reciprocity which due process demands. Moreover, in view of the fact that *Kelsaw* was decided after petitioner's trial, it cannot be suggested that the decision gave him notice that even this limited reciprocity would be granted.

difficult to quarrel with the conclusion that a "notice of alibi" provision contravenes this clear mandate, for the State would see no need for the rule unless it believed that such notice would ease its burden of proving its case or increase the efficiency of its presentation. In either case, the defendant has been compelled to aid the State in his prosecution.

The Court views the growth of "such discovery devices" as a "salutary development" because it increases the evidence available to both parties. *Ante,* at 474. This development, however, has altered the balance struck by the Constitution. The Bill of Rights does not envision an adversary proceeding between two equal parties. If that were so, we might well benefit from procedures patterned after the Rules of the Marquis of Queensberry. But, the Constitution recognized the awesome power of indictment and the virtually limitless resources of government investigators. Much of the Bill of Rights is designed to redress the advantage that inheres in a government prosecution. It is not for the Court to change that balance. See *Williams* v. *Florida, supra,* at 111–114 (Black, J., dissenting).

I agree with the Court that petitioner's conviction must be reversed, but for the reasons stated by Mr. Justice Black in his dissent in *Williams.* To reverse it because of uncertainty as to the presence of reciprocal discovery is not to take the Constitution as written but to embellish it in the manner of the old masters of substantive due process.