*In re* EDWARD NOLAN.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* EDWARD NOLAN, Respondent-Appellant.)

First District (2nd Division)    No. 77-1854

━━━━━━

Opinion filed November 28, 1978.

James J. Doherty, Public Defender, of Chicago (Timothy Murphy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BROWN delivered the opinion of the court:

Respondent, Edward Nolan, was adjudged in need of mental treatment following a bench trial in the circuit court of Cook County. He was committed to a facility of the Veteran's Administration. On appeal respondent argues that it was constitutionally and statutorily impermissible to allow the State to call him as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60) in that such procedure violated his right to assistance of counsel guaranteed by the Federal and State constitutions and by the Mental Health Code; that such procedure violates basic notions of fairness in that it was unavailable to the respondent; and that the commitment order was not supported by clear and convincing evidence.

The respondent's daughter testified at the commitment proceedings that on October 14, 1977, her father left the Veteran's Administration Hospital. On October 21, 1977, she went to a motel where respondent had been residing; he appeared to be agitated and wanting to leave. After packing his belongings into the car, which included a mop and

paraphernalia garbage, respondent told her that he had made airline reservations to Texas for business reasons. First, however, respondent wanted to go to her mother's house to see another daughter to obtain his money which had been entrusted to her. She drove him to Norridge where he wanted to make numerous phone calls. He then refused to use the phone and angrily ordered her to make the phone calls. She suggested that the air flight be cancelled and she did that. Respondent told her to return to his former place of employment to see if he could find his medication. He then instructed her to drive to numerous places in an attempt to locate his friend where he might stay. During this time he made joking reference to incest and threatened her. On one occasion, he grabbed the steering wheel while the car was traveling at 30 miles per hour but she was able to push him away. He finally remembered where his friend resided and they went there and unloaded his personal effects. She had $400 of his money which was to pay her father's living expenses. He demanded this money but she refused. He then twisted her arm behind her back and put his arm across her neck. Finally, she talked him into releasing her on the basis that his friend would hold the money. The money was given to his friend. During this episode he called her vile names including whore. She stated that her father had a long list of hospitalizations which might have been as many as six.

Doctor Emelio Jomarron testified that he had examined respondent on several occasions. He noted that on January 24, 1977, respondent was slightly withdrawn and disorganized in his stream of thought and that he was extremely suspicious and manifested some vague and paranoid ideation and persecution. He further stated that respondent was grandiose in his behavior and had poor judgment and impulse control. Doctor Jomarron recommended additional hospitalization due to respondent's paranoid, schizophrenic condition. He also was of the opinion that if released at that time respondent could not properly care for himself because of his unrealistic and impulsive judgment.

Over the objection of counsel respondent was called to testify as an adverse witness pursuant to section 60 of the Civil Practice Act. He testified that he would take his medication whenever possible. In explaining the events involving his daughter, he said that he was just being playful when he twisted her arm, and he claimed that his comments to her were merely jokes.

Respondent recognizes that involuntary commitment proceedings do not encompass the right against self-incrimination provided by the Fifth Amendment to the Federal Constitution; thus one who is subject to such matters may be called as an adverse witness. (*People ex rel. Keith v. Keith* (1967), 38 Ill. 2d 405, 231 N.E.2d 387.) Respondent however, argues that such procedure is violative of both the Federal and State constitutional guarantees to effective assistance of counsel and due process (U.S. Const.,

amends. VI and XIV, and Ill. Const. 1970, art. I, §§2 and 8) and is also prohibited by the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, pars. 1—1 to 20—1).

Respondent maintains that the section 60 procedure deprives him of counsel within the context of his counsel's advice as to the timing, presentation and content of his testimony. He further argues that the procedure is violative of due process because it reflects an imbalance in the proceedings due to the unavailability of section 60 to respondent.

Respondent's constitutional arguments are predicated upon his claim that he is being deprived of his liberty by involuntary commitment. He seeks to equate the proceedings to a criminal trial in regard to his assertion to effective assistance of counsel (*e.g., Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006) and to his due process claim (*Wardius v. State of Oregon* (1973), 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208).

■■ In the case of *In re Stephenson* (1977), 67 Ill. 2d 544, 367 N.E.2d 1273, our supreme court thoroughly examined the question as to the standard of proof necessary to sustain an involuntary commitment and analyzed a civil commitment and criminal proceedings. The court rejected the argument that proof beyond a reasonable doubt was the proper standard. In adopting the position that clear and convincing evidence was necessary the court stated:

> "Finally, we deem undesirable any additional steps which might erode the differences between mental health commitment proceedings and traditional criminal trials. (See *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976; *In re Winship* (1970), 397 U.S. 358, 375-76, 25 L. Ed. 2d 368, 90 S. Ct. 1068, 1079 (Burger, C.J., dissenting).) Mental illness is not a crime, and a person in need of mental treatment is not by reason thereof a criminal. But proof beyond a reasonable doubt is directly related to and associated with criminal trials and procedure, further exemplifying, in our opinion, its inappropriateness here." (67 Ill. 2d 544, 556.)

To accept respondent's constitutional arguments in the present case would obscure the differentiation between a criminal trial and an involuntary civil commitment. We therefore reject these contentions.

■■ Respondent relies on section 9—4 of the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 9—4), which affords him the right to counsel and adequate time to prepare the case and section 13—1 (Ill. Rev. Stat. 1977, ch. 91½, par. 13—1), which states that, if any provisions of the Mental Health Code of 1967 are contrary to the Civil Practice Act, the former governs. As respondent notes section 9—4 provides statutory safeguards to the subject of an involuntary commitment. However, we

are of the opinion there is nothing contained therein which suggests that the procedural protections afforded respondent are in contravention to section 60 of the Civil Practice Act.

Finally, respondent contends the evidence was insufficient to establish that he was in need of mental treatment. Respondent concedes that the State showed that he was suffering from a mental disorder. But he argues that there is an insufficient basis to show that he could not care for himself or guard himself against injury as a result of his condition. Ill. Rev. Stat. 1977, ch. 91½, par. 1—11.

■ Doctor Jomarron, however, expressed the opinion that respondent could not care for himself. The testimony of respondent's daughter also supports this conclusion, and it shows respondent's inability to handle his financial affairs due to his confused state of mind. After reviewing the entire record, we find clear and convincing evidence to support the commitment order. See *In re Stephenson.*

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.