STATE of Missouri, Respondent,

v.

Ricky Lynn MINER,
Defendant-Appellant.

No. 62768.

Supreme Court of Missouri,
Division No. 2.

Aug. 23, 1982.

Rehearing Denied Oct. 18, 1982.

David L. Hoven, Ballwin, for defendant-appellant.

Nancy Kelley Baker, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Presiding Judge.

Defendant Ricky Lynn Miner was convicted by a jury of murder first degree, § 565.003, RSMo 1978, and sentenced to life imprisonment. Because of the sentence imposed, this Court has exclusive appellate jurisdiction. Mo.Const. Art. V, § 3.

Defendant challenges the action of the trial court in permitting the state's rebuttal witness to testify, over objection, because: (1) she was not endorsed on the information; (2) the state had a duty to disclose the identity of rebuttal witnesses after defendant notified the state of his intent to rely on the defense of alibi (and disclosed his witnesses); and (3) the rebuttal witness had been subpoenaed eight days before trial and thus the state erred in not complying with defendant's request for discovery under Rule 25.03.

The state responds by arguing that rebuttal witnesses need not be endorsed and that since defendant did not present an alibi defense, the state did not have to disclose the rebuttal witness. Additionally, the state contends that anticipated rebuttal witnesses need not be disclosed and that no prejudice resulted from any alleged failure of the state to identify said witness. We hold that no prejudice resulted from the trial court's action.

The sufficiency of the evidence is not challenged, and an abbreviated recitation of the facts will suffice. Other facts salient to defendant's arguments will be set out where appropriate.

On Saturday, May 31, 1980, at approximately 3:00 p.m., defendant's friend James Braddy met with defendant at the Big Brushy River near Highway J in Reynolds County, Missouri. Braddy was accompanied by Bonnie Coad and her sister Sandy Coad. Bonnie lived in Ironton, Missouri, and Sandy was then living in Troy, Missouri. At the time of this meeting, Braddy was going to Troy for the purpose of taking Sandy home. Braddy disclosed his plans to take Sandy to Troy and defendant accepted an invitation to ride along.

Braddy, defendant, and the Coad sisters made three stops along the way before arriving at Sandy's home at approximately 7:30 p.m. After dropping Sandy off, the remaining three returned to Bonnie's home in Ironton. Defendant and Braddy left her home at approximately 1:30 a.m. on June 1, 1980.

Braddy and defendant then drove to Bismark, Missouri, visited briefly with a friend of Braddy's, and then left Bismark with plans to return to Troy. They made several stops along the way, the last being at Jenson's Junk Yard in Union, Missouri, shortly before 6:00 a.m., for the purpose of replacing a bad tire on Braddy's car.

While Braddy remained in the car, defendant and Evar P. Jenson, the proprietor, looked for a suitable replacement tire among some old cars. As defendant and Mr. Jenson walked toward some cars, defendant grabbed a tire jack, which had been leaning against a fifty gallon drum. Shortly thereafter, Braddy heard an unusual sound "kind of like a jack when you start going up on a jack ..., like a clunk ..., and then made like a thud ...." Braddy heard the sound again and then crawled out of the window of his car to see what was making the sound. After taking a few steps, Braddy heard the sound again. At this point, defendant ran up with a jack in one hand and some pink papers and something black (a wallet) in the other hand. Defendant said they had better leave because he had just struck somebody, and Braddy saw Mr. Jenson lying on the ground. He became frightened and the two

quickly left the junk yard, abandoned their plans to drive to Troy, and instead returned to defendant's home in Black, Missouri.

Prior to trial, disclosure of the state's intended witnesses was sought by defendant pursuant to Rule 25.03. In its motion for disclosure, the state requested defendant to disclose whether he intended to rely on the defense of alibi, giving the specific information as to the place he claimed to have been together with names and addresses to his alibi witnesses. In addition, the state, in its request, specified the place and date of the crime charged. Defendant notified the state, by means of a verbal communication, that he intended to rely upon an alibi and would call Kathy Stricklen and David Wyatt. Mr. Wyatt did not testify at trial.

Ms. Stricklen testified that on May 31, 1980, she was swimming with her family and defendant's family at the "swimming hole," that defendant joined them at 2:00 p.m., that Braddy came to the swimming hole at approximately 3:00 p.m., spoke to defendant for a few minutes, and then left without defendant. She also testified that defendant remained at the swimming hole until 4:30 p.m., at which time she left with defendant and Mr. Wyatt. Ms. Stricklen further testified that the three of them spent the evening together driving around the countryside and she last saw defendant when they dropped him off at his mother's home around 12:00 or 1:00 a.m.

In rebuttal, the state called Bonnie Coad (now Bonnie Bone), who testified that defendant did join Braddy, her sister Sandy, and herself at 3:00 p.m. on May 31, 1980. She further testified that she was with defendant and Braddy until 1:30 a.m. on June 1, 1980.

■ Defendant contends that the trial court erred in admitting the testimony of Bonnie Coad because her name was not endorsed on the information. " 'When an information or indictment is filed, it is required both by supreme court rule and the statutes that the names of all material witnesses for the prosecution be endorsed thereon .... This court has held, however,

on numerous occasions that the rule and statutes do not apply to rebuttal witnesses.' " *State v. Curtis,* 544 S.W.2d 580, 581 (Mo. banc 1976) (quoting from *State v. Washington,* 383 S.W.2d 518, 524 (Mo. 1964)); Rule 23.01(f) (formerly Rule 24.17). This point is rejected.

The next facet of defendant's contention is that the trial court erred because the state had a duty to disclose Bonnie Coad's identity after defendant notified the state of his intent to rely on the defense of alibi (and disclosed his witnesses). Defendant relies on *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); and *State v. Curtis, supra,* for the proposition that due process requires that state rebuttal witnesses not be permitted to testify in situations where a defendant has disclosed he intends to rely on alibi (and disclosed witnesses) and the state has failed to disclose the names of the persons to be called to rebut the alibi defense. However, the *Wardias* requirement of "reciprocal discovery" includes defendant's responsibility to furnish the state with *specific* information as to the place he claimed to be at the time of the offense charged, so that the state may adequately reciprocate. *See Wardias, supra,* 412 U.S. at 476, 93 S.Ct. at 2213; and *Curtis, supra,* 544 S.W.2d at 582; *see also* Rule 25.-05(A)(5).

At the time of defendant's objection to Bonnie's testimony, the state argued that it had no idea what rebuttal evidence was required until defendant put on his case. On the record before us, we are unable to ascertain whether defendant disclosed "specific" information as to the place he claimed to be at the time of the offense charged.

■ Furthermore, a careful examination of the record reveals that defendant did not disclose a true alibi witness or furnish evidence of alibi. Alibi means that defendant claims he was at another and different place than that at which the alleged crime was committed. *State v. Pruett,* 425 S.W.2d 116, 118 (Mo.1968). The

theory of alibi is that the fact of defendant's presence elsewhere is essentially inconsistent with his presence at the place where the offense was committed; therefore, he could not have personally participated. *State v. Armstead,* 283 S.W.2d 577, 581 (Mo.1955). Kathy Stricklen's testimony did not operate logically to negate defendant's presence at the time and place of the offense, *id.;* rather it merely tended to refute a portion of the state's case concerning the initial excursion of defendant, Braddy, and the Coad sisters to Troy on May 31, 1980. Therefore, Bonnie Coad's testimony did not rebut an actual alibi defense, as there was none, but she merely refuted defendant's evidence and corroborated the state's case-in-chief. *See State v. Mitchell,* 622 S.W.2d 791, 797 (Mo.App.1981) (rebuttal testimony offered not to rebut alibi but to impeach defense witness). Consequently, defendant's reliance on *Wardias, Williams,* and *Curtis* is misplaced.

■ The remaining facet of defendant's point on appeal is that the trial court erred because Bonnie Coad had been subpoenaed eight days before trial and thus the state did not comply with defendant's written request for disclosure of material witnesses the state intended to call. Rule 25.03(A)(1). At the outset we note that the duty to disclose such information is not satisfied by one response, but is a continuing one. Rule 25.08; *State v. Smothers,* 605 S.W.2d 128, 131 (Mo. banc 1980).

When Bonnie Coad was called to testify, the trial court overruled defendant's objection, which was based upon lack of endorsement and surprise, because Bonnie was a rebuttal witness. Defense counsel requested and received time to interview her. Upon finding out that Bonnie had been subpoenaed before trial, defendant again sought to exclude her testimony. The trial court ruled that rebuttal witnesses need not be noticed.

Rule 25.03 makes no exception for nondisclosure of subpoenaed witnesses that may or may not be called upon to testify in rebuttal. Certainly, the existence of the subpoena is evidence of the probability of testimony from Bonnie Coad and the state's intent to call her as a rebuttal witness. We underscore the fact that the rules of discovery are meant to extend fundamental fairness to the accused by preventing surprise and affording him an opportunity to formulate a defense and meet opposing evidence. *State v. Johnson,* 524 S.W.2d 97, 101 (Mo. banc 1975). It is apparent that there was a partial failure to comply with the discovery rules.

■ But a finding of noncompliance does not end the inquiry. We must determine whether the trial court abused its discretion in failing to exclude her testimony. It is without question that the imposition of remedies lies within the sound discretion of the trial court. It is, however, an abuse of discretion to fail to impose a sanction where the violation of a discovery rule results in fundamental unfairness or prejudice to the defendant. *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1980).

In the present case, defense counsel had been alerted to the existence of Bonnie Coad, at least one month before trial, when he took the deposition of James Braddy. Braddy mentioned Bonnie's name during the state's case-in-chief. Furthermore, defense counsel was able to interview her before she testified and conducted a lengthy and probing cross-examination. Finally, her testimony was merely cumulative to the testimony of James Braddy.

■ Under the circumstances of this case, we conclude that the failure to exclude Bonnie from testifying did not prejudice defendant and that her testimony did not result in any fundamental unfairness. For these reasons, we find no abuse of discretion in the trial court's action.

The judgment is affirmed.

All concur.