[Cite as *State v. Breedlove*, 2013-Ohio-4425.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2013-A-0016** |
| KENNETH T. BREEDLOVE, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2012 CR 646.

Judgment: Reversed and remanded.

*Mike DeWine,* Ohio Attorney General, State Office Tower, 30 East Broad Street, Columbus, OH 43215, and *Matthew J. Donahue,* Assistant Attorney General, 150 East Gay Street, 16th Floor, Columbus, OH 43215 (For Plaintiff-Appellant).

*Jason L. Fairchild,* Andrews & Pontius, L.L.C., 4817 State Road, #100, P.O. Box 10, Ashtabula, OH 44005 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} The state of Ohio appeals from the judgment of the Ashtabula County Court of Common Pleas suppressing evidence of a urine sample taken from appellee, Kenneth T. Breedlove. At issue is whether the trial court erred in suppressing the evidence where the state established the collection of the urine sample was both constitutionally and statutorily valid, but the court determined suppression was an appropriate sanction for the state's failure to comply with certain discovery orders. For

the reasons discussed in this opinion, we reverse the judgment of the trial court and remand the matter for further proceedings.

{¶2} On February 21, 2012, Ohio State Highway Patrol Officer, Sgt. Troy Sexton, was summoned to a fatal accident site on Route 534 in Ashtabula County. The officer assessed the accident scene, examined the damage to appellee's vehicle, and concluded it was consistent with a pedestrian crash. Sgt. Sexton spoke with appellee and advised him he was not under arrest. The officer explained, however, appellee was not free to leave until a preliminary investigation of the scene was completed. At no point did any responding officer believe that appellee had consumed any alcohol prior to the accident. Nevertheless, due to the severity of the event, appellee was asked by Trooper Christopher Thayne to provide a voluntary urine sample. Appellee submitted to the sample and left with his wife.

{¶3} The sample was sent to the Ohio State Highway Patrol Laboratory and tested negative for alcohol, but positive for marijuana metabolite; amphetamine; and methamphetamine. As a result, on October 17, 2012, appellee was indicted on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1), a felony of the second degree; one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2), a felony of the third degree; one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1), a felony of the third degree; one count of vehicular assault, in violation of R.C. 2903.08(A)(2), a felony of the fourth degree; and one count of operating a vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree.

2

{¶4} Prior to appellee's indictment, the Ohio Attorney General's office became involved as "special assistant prosecutors" due to potential conflicts of interest that caused the recusals of the prosecutor's office. For similar reasons, the judges of the court of common pleas recused themselves as well.

{¶5} Appellee filed a demand for discovery to which the state filed a response with a demand for reciprocal discovery. Appellee, through counsel, additionally filed a "Motion for Order to Preserve Urine Sample" in order to retain an independent toxicologist to test the sample in preparation for his defense. On November 14, 2012, the motion was granted and the state was ordered to preserve the sample.

{¶6} On November 29, 2012, the state filed a notice of substitution of counsel. Apparently, the original special assistant prosecutor was called to active military duty necessitating a replacement. On the same date, appellee filed a motion to compel discovery of "all documents and materials related to the chain of custody of the urine sample * * *; including how the urine sample was maintained * * *; when, how, and to where the urine sample was shipped; as well as documents related to how the urine sample was collected, by whom collected, and how sealed and by whom sealed[.]" The motion further sought an order to compel "[a]ll documents and written procedure manual[s] of all analytical techniques and methods used by the laboratory completing the testing of the urine sample take from Defendant * * *[.]"

{¶7} On November 30, 2012, appellee filed his motion to suppress the urine sample taken on the night of the accident. Appellee argued the seizure of his urine violated his rights under the Fourth Amendment because it occurred without probable cause that he was under the influence of drugs or alcohol. He further claimed the

3

seizure was unconstitutional because the sample was taken without his implied or voluntary consent. Finally, appellee argued the results from the tests should be suppressed because the state failed to substantially comply with necessary procedures in collecting and testing the sample.

{¶8} On December 3, 2012, the trial court ordered the state to produce the information that was the subject of appellee's November 29, 2012 motion to compel. Several days later, appellee moved the court for an order requiring the state to release the urine sample so independent testing could be taken. This motion was granted on December 10, 2012. After a pretrial, the trial court further ordered the state to produce the items subject to the motion to compel and the urine sample by December 26, 2012. The state did not meet this deadline. On January 18, 2013, however, the state moved the court for an order dismissing the case without prejudice. In its motion, the special assistant prosecutor explained he was in the midst of prosecuting a death penalty case; additionally, he asserted the state wished to further investigate the existing toxicology results in the matter sub judice.

{¶9} Several days later, a new special assistant prosecutor made an appearance and filed a motion to continue the case. On January 24, 2013, however, the trial court denied both pending motions filed by the state. With respect to the motion for dismissal, the court determined the state failed to seek leave of the court before filing its motion, in violation of Crim.R. 48(A). The court further observed that "[t]he State has been dilatory in providing discovery to the defendant that had been ordered by the court. To grant a dismissal would work a reward to the State for its dilatory actions in discovery at the expense of the defendant." Regarding the motion for continuance, the

4

court similarly found that continuing the suppression hearing would "reward the State for its failure to comply with the Court's orders for discovery."

{¶10} On January 22, 2013, the matter came before the court for the hearing on appellee's motion to suppress. After presentation of the evidence, counsel for appellee represented that his "pending motion to prohibit the use of the sample and the test results of same based upon the State's failure to disclose all this evidence as a discovery sanction *has been addressed.* * * * [M]y understanding is that the lab is in the process of or he will get to the lab a copy of the order issued by this Court to finally get the urine sample sent to the lab that I've requested that was previously ordered * * *." The court then queried whether the issue of the sample itself had been resolved, to which the special assistant prosecutor responded:

{¶11} Yes, Your Honor. * * * while Ms. Nielson[, crime Lab Director of the Toxicology Section at the Ohio State Highway Patrol Crime Lab,] was here both defense counsel and I met with her, and what the lab is going to do per their - - how things are handled, the sample essentially gets halved. So the Highway Patrol Lab retains half, the second half is sent to NMS [sic] Labs.

{¶12} I indicated to defense counsel before we leave here today I will get a certified copy of the Court's order. I will go back to my office in Columbus, I will pdf it. I will copy defense counsel on that email, and it'll be emailed to the laboratory director, and then they will then go and mail it.

5

{¶13} On March 2, 2013, the court issued its judgment entry on the motion to suppress evidence. With respect to the issues raised in appellee's motion, the court determined the responding officers did not place appellee in custody nor was he ever under arrest. The court further determined appellee gave a voluntary urine sample. And, finally, the court determined that the sample was preserved according to code and the laboratory properly conducted its tests. Notwithstanding the court's conclusions that no constitutional or statutory violations occurred, and despite counsels' respective concessions on record that the discovery issue vis-à-vis the sample had been resolved, the trial court nevertheless suppressed the evidence of the test results due to the state's failure to comply with the court's previous orders. In its judgment, the court stated:

{¶14} The Court does not take this matter lightly and has pondered long and hard on the justice to the people of the State of Ohio and to the Defendant. Long gone are the days when our justice system condones wheeling and dealing by the State with the evidence. If our Constitution and rule of law means anything at all, it means that a defendant ought to have a fair opportunity to appreciate and evaluate the evidence against him before he is forced to defend himself. Under the Constitution we label this fairness, Due Process. The defendant and his counsel have not been afforded Due Process. The defendant and his counsel were forced to enter a hearing which was [a] critical stage in the prosecution against him without the knowledge of the evidence that the defendant was entitled to. On the other hand, the Court had ordered discovery on

6

three separate occasions and those orders of the Court were either ignored or disregarded. It is not known which because the State has never bothered to explain to the Court its inability to comply. The dilatory and cavalier handling of the compliance with the Court's orders is nothing less than prosecutorial misconduct.

{¶15} The Supreme Court for decades has presented the proposition that where the defendant is placed in difficulty through the actions of the State, the State must pay the supreme penalty by having the evidence the State relies upon suppressed. This axiom is so settled, it is not necessary to cite authority.

{¶16} Therefore, the Court finds the defendant has been severely hampered in his defense by the State's failure to make discovery and the urine sample and its laboratory results are suppressed.

{¶17} From this order, the state has filed a timely appeal pursuant to Crim.R. 12(K) and R.C. 2945.67(A) asserting the following assignment of error:

{¶18} "The trial court erred to the prejudice of the State, when it suppressed the State's evidence citing 'due process' as requiring that the State's evidence be excluded for pre-trial discovery violations, without considering the least restrictive means after denying the State's motion for a dismissal without prejudice, and the State's motion to continue and without engaging in the required factfinding."

{¶19} In this case, citing a due process violation, the trial court suppressed the state's evidence as a sanction for failing to comply with discovery orders. In drawing this conclusion, the trial court determined appellee was compelled to enter a hearing

7

without knowledge of evidence to which he was entitled. The state initially notes that there is no general constitutional right to discovery in a criminal matter. *See e.g. Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 131 (1991), citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); c.f. *Wardius v. Oregon*, 412 U.S. 470 (holding that a rule of discovery must be fundamentally fair to both parties and if it is not, it violates due process). Thus, the state maintains, the failure to timely adhere to the discovery orders does not give rise to a due process violation. The state, while correct in principle, fails to appreciate the nature of the trial court's ruling.

{¶20} In this case, the issue was not that a rule of discovery was unfair, but that discovery was abused by the state in such a way to make the proceedings fundamentally unfair. The trial court answered this question in the affirmative and concluded that the state's failure to comply with the orders was tantamount to prosecutorial misconduct. Framed thusly, the court's conclusion was premised upon its position that the proceedings were rendered inherently unfair by the prosecutor's omissions, not upon an imputed constitutional right to discovery. Given this point, the trial court properly invoked the due process clause as a basis for its ruling. *See e.g. Smith v. Phillips*, 455 U.S. 209, 219 (1982) (holding that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the proceedings under scrutiny). Given this conclusion, we shall proceed and consider whether the trial court's decision to suppress the evidence was proper.

{¶21} The state concedes it failed to produce the documentation and sample that were the subjects of the discovery orders. Simply because appellee was ultimately entitled to this evidence, however, does not necessarily imply the proceedings at issue

8

were fundamentally unfair. With respect to the documentation relating to the handling and testing of the urine sample, counsel for appellee conceded he was prepared to proceed with the hearing even though the discovery had not been provided. Even when the state moved for a continuance on the motion to suppress, counsel objected and urged the court to allow the hearing to proceed. These actions demonstrate that, despite the lack of discovery, counsel was comfortable with going forward, and his client's defense would not be hampered by the state's failure to comply.

{¶22} Furthermore, to establish the sample was handled properly and the tests were conducted in accordance with all relevant code provisions, the state called Crime Lab Director Deana L. Nielsen to testify. Prior to cross-examination, defense counsel noted that he had not been given and, as a result, had not reviewed many of the documents submitted as exhibits relating to the handling and testing of the sample. And, counsel explained that his questioning might be lengthy due to his unfamiliarity with the documents. Given these points, the proceedings were paused while counsel reviewed the exhibits.

{¶23} Counsel subsequently cross-examined Ms. Nielsen in a vigorous and effective manner. Even though counsel was not privy to the exhibits prior to the hearing, he capably utilized the information contained therein in an effort to establish potential errors in the handling of the sample as well as possible non-compliance with proper laboratory procedures during the testing process. With this in mind, we conclude the state's failure to produce the documentation relating to the handling and testing of the sample, while problematic, did not render the proceedings fundamentally unfair.

{¶24} Similarly, the state's failure to produce the urine sample for independent testing did not compromise the fairness of the hearing. The issue of whether the sample contained illicit amounts of the substances alleged was not within the purview of the suppression hearing. Appellee moved the court to suppress the evidence based upon alleged violation of his constitutional rights in the sample's collection; he further alleged that, after it was collected, agents of the state failed to substantially comply with required law in handling and testing the materials. These are issues of law and procedure upon which an independent toxicology test would have no direct bearing. That said, such a test, particularly if it is favorable to appellee, would be highly probative of appellee's innocence. This is an issue relating to the weight such evidence would have at trial on the underlying charges, not of its admissibility. Thus, even though the state violated the court's discovery order and, we reiterate, that violation cannot be taken lightly, it did not compromise the fundamental fairness of the suppression proceedings.

{¶25} We therefore conclude that, given the circumstances of the case, appellee's right to due process was not violated when the state failed to comply with the discovery orders prior to the suppression hearing. The trial court therefore erred in suppressing the evidence on this basis.

{¶26} Because the court suppressed the evidence as a discovery sanction, we shall consider whether the severe sanction could have been warranted under the Ohio Rules of Criminal Procedure. We hold, given its gravity and other surrounding circumstances, such a sanction was unduly harsh.

10

{¶27} The pertinent provisions of the Criminal Rules for purposes of this matter are Crim.R. 16(A) and 16(L)(1). Crim.R. 16(A) provides:

{¶28} (A) Purpose, Scope and Reciprocity. This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and the prosecution equally, and are intended to be reciprocal. Once discovery is initiated by demand of the defendant, all parties have a continuing duty to supplement their disclosures.

{¶29} Crim.R. 16(L)(1) provides:

{¶30} (L) Regulation of Discovery.

{¶31} (1)The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶32} The general purpose of the criminal rules is to eliminate any elements of gamesmanship from a criminal proceeding. *State v. Darmond*, 135 Ohio St.3d 343,

11

2013-Ohio-966, ¶19 citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1 (1987). And the purpose of the rules governing discovery "'is to prevent surprise and the secreting of evidence favorable to one party.'" *Darmond*, *supra*; quoting *Lakewood*, *supra*.

{¶33} The imposition of sanctions for a discovery violation is a matter within the discretion of the trial court. *Darmond*, *supra*, at ¶20. When imposing a sanction for a discovery violation, however, "'[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery.'" *Id.*, syllabus, quoting *Lakewood*, paragraph two of the syllabus. Such an inquiry applies equally to discovery violations committed by the prosecution as well as violations committed by a criminal defendant. *Darmond*, *supra*, at syllabus. The following factors should be balanced when a trial court deems sanctions appropriate against the state: whether the violation of Crim.R. 16 was willful; whether foreknowledge of the undisclosed material would have benefitted the accused in the proceeding; whether the accused was prejudiced by the violation; and the effectiveness of less severe sanctions. *Id.* at ¶35, 37 citing *State v. Parson*, 6 Ohio St.3d 442, 445 (1983) and *Lakewood*, *supra*, 5.

{¶34} In this case, the trial court did not specifically consider the foregoing factors. In its judgment, however, the court observed that the state's failure to comply was a result of ignorance or disregard; the court noted it could not discern why the state failed to comply because no explanation was advanced. This does not imply the state's omissions were willful. Rather, at worst, the record suggests the failure to comply was a result of either lassitude or neglect. And the state, in its brief, identifies certain facts that

12

indicate the omission was not a result of gamesmanship or some other insidious purpose. The state notes that, during the brief time the case was open (between October 2012 and January 2013), three different special assistant prosecutors from the attorney general's office were involved in the case. And, during this three-month period, three important holidays passed. Although these points do not serve as a justification or excuse for noncompliance, they are factors militating in favor of the conclusion inadvertence and confusion were more likely the bases for the omission than bad faith or willful conduct.

**{¶35}** Further, foreknowledge of the documentation submitted as exhibits at the hearing may have helped streamline defense counsel's cross-examination on those issues; the lack of discovery of those materials as well as the sample, however, did not, as discussed above, prejudice appellee at the suppression hearing.

**{¶36}** And, even though the trial court deemed suppression the only just remedy under the circumstances, that sanction effectively abrogated the state's ability to prosecute the case. As indicated above, when imposing a discovery sanction, a court should impose the least severe sanction consistent with the purposes of the discovery rules. *Darmond, supra*, at ¶38. In this case, appellee did not suffer a clear surprise as a result of the violations and there is nothing in the record that would indicate the state was keeping the information subject to the orders secret.

**{¶37}** Finally, in its judgment entry, the trial court found that the state's failure to comply with the subject orders functioned to compel appellee to proceed with the suppression hearing without adequate knowledge or evidence to which he was entitled. The record does not support this conclusion. Prior to the hearing, the state moved the

13

court to dismiss the case without prejudice; this motion was denied. The state then moved the court for a continuance of the hearing. This motion was also denied. Given these facts, it was the trial court, not the state that, using the trial court's parlence, "forced" the defendant to enter the hearing without the materials to which he had a right. Even though the state did not fully comply with the discovery orders, it filed proper motions that, if granted, would have prevented the hearing from going forward and, in turn, prevented the purported ills of appellee proceeding without the information to which he was entitled. Hence, the determination that "[t]he defendant and his counsel were forced to enter [the] hearing" due to the state's lack of compliance, is contrary to the record and therefore an inherently unreasonable conclusion.

{¶38} In this case, the purposes of the discovery rules were not obviously or flagrantly violated; and the sanction imposed has the effect of annulling the state's ability to prosecute the crimes charged. We therefore maintain a less severe sanction or procedural course would have been proper.

{¶39} Based upon the foregoing, we conclude the trial court abused its discretion. We underscore that this opinion does not stand for the proposition that the suppression of evidence should never occur for discovery violations committed by the prosecution. That will always remain a viable option if the trial court, within its discretion, concludes the discovery violation either rendered the proceedings fundamentally unfair or the factors announced in *Darmond* necessitate such a sanction. Given the facts and circumstances of this case, however, we hold that suppression was unreasonable.

{¶40} The state's assignment of error is sustained.

{¶41} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is reversed and the matter remanded for further proceedings.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶42} I dissent from the majority's opinion, reversing the trial court's decision to suppress evidence due to the State's failure to comply with discovery orders. Since the State repeatedly failed to follow the trial court's orders, suppression of the evidence was a proper sanction.

{¶43} "The philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial." *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). "The overall purpose [of discovery] is to produce a fair trial." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, ¶ 18, citing *State v. Mitchell*, 47 Ohio App.2d 61, 80, 352 N.E.2d 636 (2nd Dist.1975). A reversal of the trial court's decision in this case is not consistent with these principles.

{¶44} Certain factors must be considered in determining whether a sanction is appropriate for a discovery violation, including whether the State's failure to disclose was willful, "foreknowledge of the information would have benefited the accused in the preparation of his defense, and * * * the accused suffered some prejudicial effect."

15

*State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995), citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). Each factor was present in this case.

**{¶45}** First, in light of the State's continued failure to comply with the trial court's orders, its contention that the violation was not willful is dubious. The facts of this case establish the great difficulty Breedlove had in obtaining the requested items through discovery. Following the filing of discovery requests, Breedlove filed a Motion to Compel Discovery on November 29, 2012, which the trial court granted on December 3, 2012. The court ordered the State to produce the requested items, which included reports relating to Breedlove's urine sample. The court also ordered the production of Breedlove's urine sample on December 10, 2012. Following a December 18 pretrial, the trial court required the State to provide the foregoing items to Breedlove by December 26. By the State's own admission, the majority of the items requested by Breedlove's counsel were not given to him by that date or even by the suppression hearing held on January 22.

**{¶46}** It must be emphasized that the State failed to comply with **three** separate court orders to provide discovery. This is not a case in which one order was violated, due to an inadvertent error or mistake. *Compare State v. Bidinost*, 71 Ohio St.3d 449, 457, 644 N.E.2d 318 (1994) (where the prosecutor erroneously assumed that a verbal notification of evidence had satisfied her obligations under the discovery rules, no willful violation occurred). The State's actions here involved the violation of multiple trial court orders without a concrete justification for its failure to comply. *See State v. Brooks*, 7th Dist. Jefferson No. 04 JE 10, 2004-Ohio-4546, ¶ 34 (when requested materials were available to the State but it ignored both the motion to compel and the court's discovery

16

order and failed to produce the items until after the hearing, the discovery violation was willful). In fact, the State made little effort to provide the information even three weeks after the deadline set by the court.

{¶47} The reasons provided for the State's failure to comply with the discovery orders are not sufficient to avoid a sanction for its conduct. The State explained that a substitution of counsel occurred on November 29, 2012, since the prosecutor had been recalled to active military duty, and the newly appointed prosecutor was involved in a death penalty case. Regardless of these problems, there was no reason that the other prosecutors could not have fulfilled the duty to comply with discovery or, at the very least, responded with a request for an extension before the deadline, not weeks later. As an additional reason for the delay, the majority notes that, during the three months that the case was open "three important holidays passed." *Supra* at ¶ 34. Holidays certainly cannot be considered as an excuse for failing to provide a fair trial and due process to a criminal defendant. The State's scheduling and planning problems cannot be imposed upon a defendant.

{¶48} The remaining elements were also met, since the materials requested would have benefitted Breedlove and the State's failure to provide them did result in prejudice. Breedlove's Motion to Suppress raised various challenges related to the techniques used to store and test the urine sample, including questions regarding the container in which the sample was stored, the labeling of the sample, and the specific testing procedures used. Breedlove's counsel was unable to have the urine sample examined by his own experts prior to the suppression hearing or review the additional laboratory reports that were requested. This opportunity could have benefitted

17

Breedlove and ultimately led to information that would support the suppression of this evidence. Being unable to fully challenge this matter prejudiced Breedlove.

{¶49} The majority argues that the trial court, not the State, forced the defendant to proceed with the suppression hearing, by denying the State's request for a continuance and, therefore, the State cannot be held responsible for the potential prejudice to Breedlove. *Supra* at ¶ 37. The trial court, however, simply protected the defendant's right to not be subject to delay and forced the State to comply with the rules of discovery. While a continuance or dismissal without prejudice may benefit the State, it is detrimental to Breedlove, who should not have the charges pending against him until the State finally decides to comply with the orders of the trial court. The State cannot be rewarded for its disregard for the court's order. *See State v. Smith*, 11th Dist. Ashtabula No. 2000-A-0052, 2001 Ohio App. LEXIS 3531, 16 (Aug. 10, 2001) (the denial of a continuance was proper, since "reversing the trial court's use of discretion in this matter would subsidize such behavior in the future * * * [and] give the green light to gamesmanship"). Given the repeated unanswered requests for discovery, there is no guarantee that, had a continuance been granted, the State would have timely complied. For these reasons, the majority's argument that a less harsh sanction or penalty could have been ordered is meritless.

{¶50} When the State has been given several opportunities and failed to abide by the court's orders, a more severe sanction is necessary to ensure future compliance and to "send a message" that parties must follow discovery orders and rules. *See Smith* at 15-16 (upholding the trial court's dismissal of a charge when "the state had

multiple opportunities to comply [with discovery orders], and to do what it should have done in the first place, yet it failed to comply").

{¶51} Based on the facts before the trial court, and when considering that the criminal rules give "wide authority to the trial court in fashioning a remedy for a discovery violation," the trial court did not abuse its discretion in suppressing the evidence due to the State's repeated failure to comply with discovery orders. *State v. Kelly*, 12th Dist. Butler No. CA2006-01-002, 2007-Ohio-124, ¶ 9. Therefore, I respectfully dissent and would affirm the decision of the court below.