STATE of Missouri, Respondent,

v.

Kenneth Leroy HUTSON, Appellant.

No. WD 33172.

Missouri Court of Appeals, Western District.

Dec. 7, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Feb. 8, 1983.

Application to Transfer Denied March 29, 1983.

Thomas J. Marshall, Moberly, for appellant.

John Ashcroft, Atty. Gen. and William K. Haas, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

KENNEDY, Judge.

Kenneth Leroy Hutson was convicted upon jury trial of first-degree robbery, § 569.020, RSMo 1978, and was sentenced to 10 years' imprisonment.

Upon this appeal he alleges five separate instances of trial error which he says entitled him to reversal of the judgment.

We have examined each point and affirm the judgment.

The facts of the case are that on December 17, 1980, at about 6:30 p.m., two men, one armed with a shotgun, entered the rural home of 78-year-old Albert Weston, where he lived alone, overpowered him and robbed him of $400 and three guns. One of the men was wearing a mask but the other, the one with the shotgun, was identified by Mr. Weston as the defendant. Defendant was placed in the neighborhood at about the time of the robbery by the testimony of Helen Wilmsmeyer and her 14-year-old son, Chris Wilmsmeyer, who lived about one and one-half miles from the Albert Weston home. They identified defendant as a man who had come to their door about 6 o'clock on the evening of the robbery. He was asking for directions to the home of a "McMahan". He said he had been directed to "come east of New Franklin and go past the Westons where there is a sign, and take the next road on the left and it was the

first house on the left". The house reached by those directions, according to Mrs. Wilmsmeyer, would be Albert Weston's. "The Westons where there is a sign" would be the residence of the victim's son, Mrs. Wilmsmeyer testified. The man—who was accompanied by a second person who remained in the car at the Wilmsmeyer house—drove away by a route which led to the Albert Weston house.

Defendant put forward an alibi defense. Various witnesses placed defendant in Boonville, a distance of 10 miles—or by another estimate, 8 miles—from the scene of the robbery, as early as 5:30 p.m. and as late as 6:15 p.m. (before the time of the robbery) and also at 6:45 p.m., 7 o'clock p.m., 9 o'clock p.m., and 9:45 o'clock p.m. after the time of the robbery. Defendant himself did not testify.

Appellant's points will be taken up in order.

I

Appellant complains of the testimony of state's rebuttal witness, Lt. Jim Gholsen. These complaints are on two grounds—first, that he was tardily endorsed as a state's witness, and second, that his testimony of a statement made to him by the defendant had not been disclosed as required by various rules for criminal discovery (Supreme Court Rules 25.01 through 25.16). On the morning of the commencement of the trial, the court allowed the endorsement of the name of Lt. Gholsen of the Boonville Police Department as a witness for the state.

■ Lt. Gholsen testified in rebuttal that he went with two deputies to pick up appellant the day after the robbery. While defendant was under arrest, Gholsen said, he had made the statement, when confronted with the Weston robbery of December 17, "that he was so screwed up or possibly drunk he didn't know where he was at or what he had done". Appellant acknowledges that as a general rule a rebuttal witness is not required by Supreme Court Rule 23.01(f) to be endorsed upon the information. *Dayton v. State,* 608 S.W.2d 490, 492 (Mo.App.1980). He says, however, that Lt. Gholsen's testimony was not proper rebuttal testimony but should have been presented in the state's case in chief.

We hold, however, that Lt. Gholsen's testimony was proper rebuttal evidence. It tended to discredit the testimony of the defendant's alibi witnesses. That testimony was that defendant had assisted Linda Nobel move her possessions from a house in Old Franklin to an apartment in Boonville between 5:30 p.m. and 6:15 p.m. on the day of the robbery. Defense witness Purvis, who had assisted in the move, had testified in defendant's behalf that defendant did not appear to have been drinking.

Another answer to appellant's late-endorsement argument is that the trial court has broad discretion to permit late endorsements, even of the state's case-in-chief witnesses. The trial court's ruling will not be disturbed unless it is shown that defendant was thereby prejudiced. *State v. Cameron,* 604 S.W.2d 653, 658 (Mo.App.1980). We are unable to see any prejudice to defendant upon this record.

■ Defendant makes a second point, however, about Lt. Gholsen's testimony. He cites *State v. Curtis,* 544 S.W.2d 580 (Mo. banc 1976), where Judge Donnelly wrote:

We must recognize that under the law announced in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), due process requires that State rebuttal witnesses not be permitted to testify in situations where a defendant has disclosed he intends to rely on the defense of alibi (and disclosed his witnesses) *and* the State has failed to disclose the names of the persons to be called to rebut the defense of alibi.

544 S.W.2d at 582.

Defendant in the present case had disclosed his alibi defense and his alibi witnesses. The prosecutor did on the morning of

the trial file a written disclosure, stating the name of witness Gholsen and the defendant's statement to which the witness was expected to testify. The prosecutor told the court and defense counsel that he had learned of the witness's statement only two days before, and further said, ". . . I have talked with Mr. Bruce Beckett, Mr. Smith's associate, and advised him as to the fact I was going to try and ask leave of court to make this additional witness . . . ." Defendant did not deny the prosecutor's statement. He objected to the tardy endorsement but asked for no continuance. Gholsen did not testify till near the end of the two-day trial, so that the defense attorney would have had ample opportunity to interview him and determine specifically what his testimony would be, and learn also whether he had information which would lead to other testimony. The court was well within his discretion in allowing Lt. Gholsen to testify, and the state was guilty of no violation of the rule of *State v. Curtis,* supra. *State v. Lorenze,* 592 S.W.2d 523, 527 (Mo.App.1979).

## II

■ For his second point, defendant complains of the exclusion of testimony of Marsha Amick, one of his witnesses, which he says would have rehabilitated another of defendant's witnesses who had been impeached by use of a prior inconsistent statement.

Jimmie Simmons was a defense witness. He testified that he had talked with some person about "robbing a property". (Presumably this conversation took place before the Weston robbery, and could have referred to a plan to rob Mr. Weston.) At the defendant's preliminary hearing, Simmons had testified to this conversation and had said that it was with the defendant Hutson. According to his preliminary hearing testimony, he was riding with Hutson in his car when Hutson asked him "to help him rob an old man, to—in exact words, said that he was going to rush the old man and take his money." Now, upon the trial he testified again that the conversation took place, "except the individual was not the right individual." He denied that it was the defendant whom he had talked with, but he declined to identify the person.

"I feel like I can plead the Fifth Amendment to that question", he replied, when asked to identify the person.

Defendant claims that he should have been permitted to prove by Marsha Amick that she heard Simmons and one Darrell Linhart talking together at a party at about the date of the robbery, when they said that they had "gone over the bridge and robbed a place [that] evening."

This testimony was admissible, defendant says, to rehabilitate Jimmie Simmons by showing that he had before trial made a statement which was consistent with his trial testimony. The general principle of rehabilitation of a witness, impeached by prior inconsistent statements, by proof of prior consistent statements, is supported by the following cases: *Stafford v. Lyon,* 413 S.W.2d 495, 498 (Mo.1967); *State v. Earvin,* 539 S.W.2d 615, 616 (Mo.App.1976).

There was, however, nothing inconsistent between Simmons' trial testimony, i.e., that he had been asked by some person other than defendant Hutson to assist in robbing an old man of his money, and the rehabilitating statement to which Marsha Amick would testify, namely, that Simmons and one Darrell Linhart said they had gone over the bridge and robbed a place that evening. There was nothing about Marsha Amick's proposed testimony which would tend to support Simmons' trial testimony (that someone, not defendant, had attempted on the day before the Weston robbery to enlist his aid in robbing an old man) as against his preliminary hearing testimony that defendant had sought his aid for that purpose.

## III

■ Defendant next complains of a volunteered statement of state's witness, Dep-

uty Sheriff Sandbothe. Deputy Sheriff Sandbothe was being questioned about the fact that defendant had shaved off his goatee after his arrest on December 18 and before the lineup on December 19. Sandbothe answered: "He had a different lawyer at the time". The record proceeds as follows:

MR. SMITH: Your Honor, I don't see the relevance of this, about a different lawyer.

THE COURT: Sustained as to that part of the answer and it will be ordered stricken. You may rephrase your question.

ANSWER: Well, he was told to cut it off.

MR. SMITH: Just a minute. I move that be stricken.

THE COURT: Yes, the jury will disregard the statement of the witness. Proceed.

Defendant then made a motion for a mistrial which the court overruled.

Defendant says the court erred in declining to declare a mistrial.

The court was within his discretion in refusing the drastic remedy of mistrial after having instructed the jury to disregard the witness's answer. It is questionable whether the defendant's voluntary shaving off his goatee would have been any less damaging than his having done so upon the advice of his lawyer. In any case, that was a consideration for the trial court to weigh. We will not overrule his evaluation of the damaging effect of the witness's testimony and the curative efficacy of his instruction to the jury to disregard the testimony. *State v. Johnson,* 496 S.W.2d 852, 857–58 (Mo.1973).

## IV

Then defendant complains that Deputy Sheriff Sandbothe's notes of his interrogation of the defendant after defendant's arrest, particularly with regard to defendant's alibi, were not disclosed to him by the state in response to his request for disclosure. Deputy Sandbothe had testified on preliminary hearing: "We just had a few—we just had a few things down on paper that he told us, like he was at a certain place here and a certain place there and wasn't involved with this, just notes that were jotted down." In a conversation among the preliminary-hearing judge, the prosecuting attorney and defense counsel, it was agreed that the defendant was entitled to examine the notes.

There is nothing further in the record about Deputy Sandbothe's notes until the motion for a new trial, where defendant alleged that the notes had not been supplied to him. We will assume that the notes were not furnished, as defendant alleges, although such a statement in the motion for a new trial does not prove itself. *State v. Pence,* 428 S.W.2d 503, 506 (Mo.1968).

Defendant knew five months before trial of the existence of the notes. In order to obtain the notes, or to invoke sanctions for the failure of the state to furnish them, defendant must have drawn the matter to the trial court's attention and must have asked for relief at least before the motion for a new trial. Supreme Court Rule 25.16 provides that

[i]f at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make a disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such orders as it deems just under the circumstances.

■ It is held that mistrial (and a new trial is the equivalent of a mistrial) is a remedy which will be granted only where other relief is inadequate, and where there is fundamental unfairness to the defendant in allowing the trial to proceed without the disclosure. *State v. White,* 621 S.W.2d 287,

294 (Mo.1981); *State v. Nickens,* 581 S.W.2d 99, 101 (Mo.App.1979). Defendant could not wait until motion for new trial, when the only possible remedy would be a new trial, and the opportunity for any other remedy had passed, to complain of incomplete disclosure by the state.

## V

■ Finally, appellant makes the point that the evidence was insufficient to support the verdict.

Appellant emphasizes under this point some uncertainty in Mr. Weston's identification of defendant. He failed to identify him in a lineup two days after the robbery. The evidence shows the defendant, who had had a goatee, had shaved it off before that lineup. When Mr. Weston on the same day was shown a photograph of the defendant with the goatee—the picture had been taken on December 18, at the time of defendant's arrest—he promptly and positively identified him. He identified him later at the preliminary hearing, and also pointed him out at the trial. The description he initially gave to the officer was of a person who had "long sandy hair" and a goatee. The description matched that given by Mrs. Wilmsmeyer, who gave the color of her visitor's hair as "reddish blonde". Mrs. Wilmsmeyer and Chris were unhesitating in their identification of defendant.

The evidence is entirely sufficient to support the verdict.

Judgment affirmed.

All concur.