OPINION OF THE COURT
Jerome L. Reinstein, J.
After trial to a jury defendant was convicted of murdering Nathan Masselli on August 25, 1982. During the course of the trial two novel issues arose involving applications by the People for leave to introduce evidence despite their failure to give timely statutory notices of such intent. For the reasons hereinbelow stated leave was granted in one instance, but not in the other.
Defendant was an early suspect in the Masselli killing and within a few days after the homicide he and other *855 members of a local social club, where defendant claimed he spent the evening of August 25, were interviewed by FBI agents. Defendant was interviewed on August 30, 1982 by Special Agent Paul William Deeper, who filed a written report of such interview which was essentially exculpatory in nature. In due course, copies of said report were given to the Bronx District Attorney who forwarded a copy thereof to defense counsel.
Defendant was arrested for the Masselli murder on September 15, 1982, and indicted shortly thereafter. On October 1, 1982, defendant served a timely “notice of alibi” pursuant to CPL 250.20 (subd 1), listing 14 alibi witnesses. No reciprocal notice of proposed rebuttal witnesses was ever served by the People. (See CPL 250.20, subd 2.)
One of the last witnesses scheduled by the People on their direct case was Agent Deeper. It was anticipated (as detailed in the agent’s written report) that Deeper would only testify to defendant’s admission to (a) having seen Masselli outside of the social club approximately one hour prior to his death and (b) discussing with Masselli a pending Federal Grand Jury investigation at which Masselli’s father, a Federal prisoner, was scheduled to testify. On the morning of his scheduled appearance as a witness Agent Deeper advised the trial Assistant District Attorney that he also recalled a second “informal” conversation with the defendant which took place 5 or 10 minutes after the “formal” interview was concluded on August 30, 1982. During this second conversation, which the agent described as mere “bantering”, he asked the defendant how the Masselli killing could have taken place in view of defendant’s close relationship with the Masselli family and the fact that all were involved in organized crime. Defendant allegedly responded, “if you believe those things — if an order comes down you have to do what you have to do.”
The court and defense counsel were immediately notified of this second alleged statement and of the District Attorney’s intent to offer it at trial. Defense counsel strenuously objected claiming lack of notice. (See CPL 710.30, subd 1, par [a].) The People argued that good cause had been shown for the failure to give prior notice. (See CPL 710.30, subd 2.)
*856 A hearing was thereupon held, outside the presence of the jury, to determine if the statement should be allowed to be introduced at the trial, at which Agent Leeper, the supervising agent of the FBI’s New Rochelle office, the New York City detective in charge of the Masselli homicide investigation and the former chief of the Bronx District Attorney’s Homicide Bureau testified. All agreed that the city police and the FBI co-operated in a parallel investigation into the homicide. The city police sought the perpetrators of the homicide, while the FBI investigated the possibility of an obstruction of justice charge involving a pending Federal investigation of possible violations of law by a member of the United States Cabinet. Joint interviews of witnesses were sometimes conducted to avoid duplication of effort and some, but not all, follow-up reports were exchanged. No joint task force (which involves a written memorandum of understanding) was ever formed under a single supervisor and each investigative agency acted independently, though co-operatively. The FBI “wound down” its investigation in October or November, 1982, and formally concluded it in February, 1983.
At the end of the People’s case the defendant called 3 of the 14 alibi witnesses on his notice of alibi list, all of whom testified that the defendant was at the social club on August 25, 1982, at the time Masselli was murdered several miles away. One of the witnesses, Katherine Huested, denied ever telling an FBI agent she was not at the club that evening. After the defendant rested the People stated their intention to call the FBI agent who had interviewed Huested and, as a rebuttal witness to discredit defendant’s alibi, one of the other persons listed on defendant’s notice of alibi. The defense objected to the receipt of such evidence, again arguing the lack of statutory notice.
I. THE STATEMENT
“When the People intend to offer at trial evidence of statements made by a defendant to a police officer, which if involuntarily made would render the evidence of those statements suppressible, they ‘must serve upon the defendant a notice of such intention’ before trial (CPL 710.30, subds 1,2). Only upon a showing of ‘good cause’ may the court permit service of the notice during trial with a *857 reasonable opportunity to make a suppression motion during trial.” (People v Briggs, 38 NY2d 319, 322.) Although “[t]he obvious purpose of the statute is to afford a defendant adequate time in preparing his case in respect to the voluntariness of a confession or admission” (People v Greer, 42 NY2d 170,178), “independent of considerations of challenging the voluntariness of his statements, considerations of fair play demand that a possibly unaware defendant be apprised before trial of any incriminating statements intended to be offered against him” (People v Briggs, supra, at p 323).
In Briggs (supra, p 324) a “lack of continuity” in a prosecutor’s office was held to be the type of “office failure” which did not constitute good cause for a failure to give the required pretrial notice. In People v Spruill (47 NY2d 869) this concept of office failure was expanded to include the failure of a police officer to notify the prosecutor of defendant’s confession prior to trial.
. The question presented in this case, for which there appears to be no prior New York precedent, is whether this principle should be further enlarged to encompass noncommunication by a Federal investigatory agency.
In People v McLaurin (38 NY2d 123), which was cited by the Spruill court (47 NY2d 869, supra), it was held (on a speedy trial issue) that a New York prosecutor should not be charged with knowledge of defendant’s New Jersey incarceration (although such knowledge on the part of the police department would be imputed to the District Attorney’s office). In another seemingly analogous situation (involving the right to counsel) it was recently held that “[a]ctual knowledge of one police agency will not be constructively imputed to another unless the two agencies are working so closely that it can be deemed a joint investigation” (People v Fuschino, 59 NY2d 91, 99).
Since the New York City Police Department and the FBI were involved in parallel (albeit co-operative) investigations, under separate commands, rather than a joint investigation, there appeared to be no basis or justification for imputing knowledge by the FBI to the New York City Police Department and then through the latter to the Bronx District Attorney’s office; and it was so held. Defen *858 dant was thereupon afforded an opportunity to move to suppress the additional statement sought to be introduced, but he declined fearing such motion, if denied would constitute a waiver of his right to contest its receipt upon the finding of good cause for late notice. (See CPL 710.30, subd 3.)
II. THE REBUTTAL EVIDENCE
A contrary result was reached with respect to the People’s attempt to introduce evidence to rebut defendant’s alibi. The District Attorney conceded knowledge of Ms. Huested’s alleged prior inconsistent statement to an FBI agent and of the prospective testimony of one of the witnesses listed in defendant’s notice of alibi; but chose not to serve any reciprocal notice in the belief that it was unnecessary for him to do so when, as here, the agent’s evidence was only for impeachment purposes and the name of the rebuttal witness was already known to the defendant.
The FBI agent’s prospective testimony was not truly rebuttal; and no statutory notice was required to be given. If believed by the jury, such evidence would have discredited Ms. Huested, not defendant’s alibi. The fact that Ms. Huested was not at the social club on August 25,1982, did not prove that the defendant was not there at the time of the homicide. However, this evidence was excluded for another reason. Its sole purpose was to impeach Ms. Hues-ted’s credibility and was not relevant to any other issue in the case, nor was it independently admissible to impeach the witness. Accordingly, its introduction ran afoul of the general rule that extrinsic evidence may not be introduced to impeach a witness on a collateral matter. (See People v Schwartzman, 24 NY2d 241; People v Orse, 91 AD2d 1003; Richardson, Evidence [10th ed], § 491, p 477.)
The other witness, according to the District Attorney’s offer of proof, would have discredited defendant’s alibi and testified to seeing the defendant arrive at another Bronx location at about 8:45 p.m. on August 25, 1982, which would have been consistent with other evidence of his prior participation in the Masselli homicide at approximately 8:10 p.m.; and contradict the evidence that defendant was at the social club at those precise times.
*859 There appear to be no cases directly on point on this issue in this State. The People contend that reciprocal notice is not required where, as here, the defendant himself provided the witness’ name and presumably knew the substance of his testimony (cf. State v Case, 547 P2d 221 [Utah]). However, it would defy common sense to assume that a defendant would knowingly proffer the name of a witness who would discredit his defense. This precise issue was presented in People v Alexander (82 Mich App 621, 627, lv to app den 406 Mich 936) wherein the court held, under a comparable Michigan statute: “While a defendant arguably should know how a witness whom he has listed on a notice of alibi will testify, a defendant should also be entitled to know whether the prosecution will rely on that witness in rebuttal. We decline to find an exception to the statutory requirement that the prosecution give notice of rebuttal alibi witnesses where the witness in question is listed in the defendant’s notice of alibi.” (See, also, United States v Myers, 550 F2d 1036.)
In Wardius v Oregon (412 US 470, 473-474) the Supreme Court perceptively stated: “Notice-of-alibi rules, now in use in a large and growing number of States, are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial * * * The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we recognized in Williams [Williams v Florida, 399 US 78], nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. ‘The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as “due process” is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.’ ”
*860 Although the New York statute (CPL 250.20, subd 4) gives the court discretion to receive such rebuttal testimony despite the failure of the People to serve a reciprocal notice (provided defendant is granted, upon request, an adjournment not exceeding three days), the court concluded that, in the circumstances of this case, to exercise such discretion would be to abuse it.