560 A.2d 56

**Morris E. BROOKS**

v.

**STATE of Maryland.**

**No. 1697, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

July 5, 1989.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted Before WILNER, KARWACKI and POLLITT, JJ.

WILNER, Judge.

A jury in the Circuit Court for Baltimore City convicted appellant of driving while intoxicated. There was ample evidence to support the jury's verdict, and yet we must reverse.

Appellant never suggested that he was not drunk—legally intoxicated—when Officer Lavern Johnson came upon him on the evening of April 6, 1988. He simply denied that he was driving while in that condition.

The case presented a classic conflict in the evidence—the quintessential jury issue. Officer Johnson testified that she observed appellant driving north on Park Heights Avenue

erratically and without headlights, that she activated her siren and flashing lights, and, after a brief pursuit, pulled him over. She approached his car and asked for his license and registration card, which he was unable to produce. Detecting the odor of alcohol, she requested him to get out of his car to take a field sobriety test. Appellant did get out of the car and take (and fail) the test. He was then arrested. A subsequent breath test revealed a blood alcohol content of 0.25.

Appellant told a different story. He said that he had been to an American Legion meeting on Madison Avenue, that he had been drinking, and that, in accordance with Legion custom, one of his "comrades" took his car keys and offered to drive him, in his (appellant's) car, at least partway home. Appellant's testimony was somewhat unclear, but it appears that the comrade intended to drive him north on Park Heights Avenue as far as Cold Spring Lane and then leave appellant and catch a bus, but that, just after passing Park Circle, the comrade saw a bus going his way and so left appellant farther south than anticipated. Appellant claimed that he had a friend who lived across the street from where the comrade left him and expected the friend to assist him in some way. To his chagrin, however, appellant discovered that (1) his friend was not home, (2) the comrade had neglected to return his car keys, and (3) it was raining. To make the best of a bad situation, appellant left his car and sat in the rain on another car parked a block or so from his car, waiting for a cab. That is what he was doing, he said, when Officer Johnson came upon him. He swore that he was on, not in, the car, that the car he was on was not his, and that he could not have been driving a car because he had no keys.

Prior to offering his own testimony, appellant proposed to call his comrade as a witness to testify, in the words of defense counsel, "[t]hat my client wasn't driving." The State objected because "[w]e have no notice of any witness whatsoever." The court sustained the objection and precluded the witness from testifying:

"THE COURT: You had got his name. Under the circumstances I have to rule him out. I'll tell you why. It's not so much the technical applicability of the rule, which I think I'm obliged to do in any event, but in a case of this nature, when the person is going to come in and I presume the proffer is he's going to testify that he wasn't driving. Isn't that the proffer?

MR. GRIER [Defense counsel]: That my client wasn't driving.

THE COURT: He being your client. This clearly is something that the State has an absolute right to know about in advance and for the purpose of doing the proper investigation.

It's a dramatic statement that may fly directly in the face of the State's case and goes to the heart of this case and it's first presented to them at 14 minutes after 3:00 in the midst of a trial which really should conclude today if possible.

You know I'm not rushing the trial, but we have a horrendous docket. I think it's unduly bound to move these cases along. This case was originally scheduled in the district court and your client decided to bring it here for a jury trial. So he's had more than ample time to notify everybody in the world of his witnesses or this witness I should say. So I'm going to exclude the witness with all due respect and with some regret."

The court erred in that ruling. The error requires reversal.

 "In the orthodox common-law practice," says Professor Wigmore via Professor Chadbourn, "no notice was required to be given to the prosecution of witnesses intended to be called by the accused." 6 J. Wigmore, *Evidence in Trials at Common Law* §§ 1855b, 1847(1) (Chadbourn Rev. 1976). That is no longer entirely the case. As Wigmore/Chadbourn point out:

"[M]odern conditions have revealed (or produced) frequent abuses by unscrupulous counsel in manufacturing

testimony, and the calling of such witnesses without prior notice renders it impracticable for the prosecution to expose the fabrication. A false *alibi* is perhaps the most frequent issue in which this kind of chicanery is used with success; the prosecution, if given warning, could be prepared with witnesses to refute it; but without warning the refutation is impracticable. Accordingly, legislation has been enacted requiring the accused to give to the prosecution the same fair warning to which he himself is universally entitld. . . ."

*Id.* at § 1855b. See also *Williams v. Florida*, 399 U.S. 78, 81–82, 90 S.Ct. 1893, 1895–1896, 26 L.Ed.2d 446 (1970) and *Wardius v. Oregon*, 412 U.S. 470, 471–72, 93 S.Ct. 2208, 2210–11, 37 L.Ed.2d 82 (1973), dealing specifically with the advent and purpose of "notice of alibi" rules.

Although one or more States, in response to the problem, appear to have adopted broad discovery rules requiring the prosecution and the defense to disclose *all* intended witnesses, *see, for example, Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (noting and enforcing Illinois Sup.Ct. Rule 413(d)), most States that have addressed the problem have carefully limited the mandatory disclosure of defense witnesses to alibi witnesses. *See* 6 J. Wigmore, *supra*, § 1855b n. 5; *see also Taliaferro v. State*, 295 Md. 376, 387, 456 A.2d 29, *cert. denied* 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983). That is the Federal practice as well. *See* Fed.R.Crim.P. 12.1.

Until 1977, criminal defendants in Maryland were not required by Rule or statute to disclose anything to the State prior to trial. The only discovery required in criminal cases was on the part of the State, *see* Gen. Rules of Pract. and Proc. Pt. IV, Rule 5; Md. Rule 728 (1957), and, notwithstanding a reference in the Rule to the "inherent power of the court to require or permit discovery," the Court of Appeals seemed to regard the right to discovery as essentially limited to what was allowed in the Rule. *See Kardy v. Shook, J.*, 237 Md. 524, 539–40, 207 A.2d 83 (1965).

Discovery requirements on the part of defendants first appeared in Maryland in 1977 with the revision of the Ch. 700 Rules applicable to criminal causes. Rule 741 d. required a defendant, upon request by the State, to provide certain demonstrative evidence (§ d.1), reports of *experts* whom the defendant intended to call as witnesses (§ d.2), and

"Upon designation by the State of the time, place and date of the alleged occurrence, furnish the name and address of each witness other than the defendant whom the defendant intends to call as a witness to show he was not present at the time, place and date designated by the State in its request."

(§ d.3).

The current Maryland Rule (Rule 4–263(d)(3)) is virtually identical to former Rule 741 d, the only differences being of a stylistic nature. With respect to the disclosure of witnesses other than experts, it follows in substance, if not in procedure, Fed.R.Crim.P. 12.1, *see Middleton v. State,* 49 Md.App. 286, 289 n. 1, 431 A.2d 734, *cert. denied* 291 Md. 779 (1981), and the Florida rule approved by the Supreme Court in *Williams v. Florida, supra,* 399 U.S. 78, 104–05, 90 S.Ct. 1893, 1907–08. It is, in fact, narrower than those rules, which require disclosure not only of the witnesses but also of the specific places where the defendant claims to have been at the time of the alleged offense. *Compare* 2 American Bar Assoc. Std. for Crim. Justice 11–3.3(a)(i) (2d ed., Supp.1986).

The Maryland rule is obviously a limited one in this regard. It does not require advance disclosure of all defense witnesses but only those who will be called either as experts or to show "that the defendant was not present at the time, place and date" of the offense, as designated by the State. The witness proffered by appellant was neither an expert nor called to show that appellant was not *present*, only that he was not *driving.* Appellant's presence at the scene, as we have said, was conceded. Because the witness was not an alibi witness covered by the Rule and because no

other proper challenge was made to his proffered testimony, the court erred in excluding him. The error, of course, was of Constitutional dimension, as it effected a transgression of appellant's right under the Sixth and Fourteenth Amendments to the United States Constitution and article 21 of the Maryland Declaration of Rights to present witnesses in his defense. Given the clear and predominant issue of credibility upon which the case hinged, there is no way that we can say the error was harmless.

JUDGMENT REVERSED; MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.