**STATE of Missouri, Respondent,**

v.

**Shawn D. EVANS, Appellant.**

**No. WD 48647.**

Missouri Court of Appeals,
Western District.

March 28, 1995.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and HANNA and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Defendant Shawn Evans appeals from his convictions for burglary in the first degree under section 569.160, RSMo 1986[1], robbery in the first degree under section 569.020, and armed criminal action under section 571.015.1, for which he was sentenced to concurrent prison terms of five, ten, and seven years, respectively.

---

1. All statutory references are to RSMo 1986 un-

The victim of these crimes was Fred Boedeker. Mr. Boedeker testified that shortly after 3:00 p.m. on the afternoon of Friday, May 29, 1992, a man with a four or five inch knife accosted him in his bathroom as he was getting ready to take a bath and said "I want your money." Mr. Boedeker described the intruder as a thin, white male, about 18 years old, with light to medium brown hair which was relatively short, wearing a baseball cap, blue jeans and a gray sweatshirt with a black emblem on it.

Mr. Boedeker testified that the intruder took his billfold and forced him to go through his clothes, the drawers of his chest, his kitchen, and the other rooms in the house looking for money or other things of value. At one point, Mr. Boedeker attempted to grab the knife, but the intruder resisted and struck Mr. Boedeker in the eye, breaking his glasses and causing a gash which required five stitches. After the intruder found $700, which Mr. Boedeker had hidden in one of his drawers, he ordered Mr. Boedeker into the bathroom. Fearful that the intruder would stab him, Mr. Boedeker locked the bathroom door and remained in that room until he heard the intruder leave and then called the police.

Mr. Boedeker was unable to identify Mr. Evans at a line-up, but he later claimed that this was because the lighting was bad and he had cataracts. At trial, he identified Mr. Evans as the intruder and also stated that he recognized Mr. Evans' voice as the voice of the intruder.

A neighbor of Mr. Boedeker had noticed a mustard-yellow car with black on its top circling her block at about 2:30 or 3:00 p.m. on the day of the crime. She saw a young man who had been riding as a passenger get out of the car. He was in his late teens or early twenties, wearing a gray T-shirt, jeans and a billed cap, and his hair was somewhat longer than usual. She saw a person matching the same description get back into the car at about the time that the burglar left Mr. Boedeker's home. At a pre-trial line-up, she identified Defendant as the person she had seen. She also identified the driver of the

less otherwise stated.

car as John Fizer. At trial, she stated that Defendant "resembled" the person she had seen, but that she could not be absolutely sure it was the same person. She also identified John Fizer's car as the car in which she thought she had seen Defendant riding.

Defendant notified the State prior to trial that he would rely on an alibi defense. He identified six alibi witnesses in his answers to the State's interrogatories, and further stated: "these alibi witnesses were with the Defendant from 11:00 a.m. to 6:00 p.m. on 29 May 92 in Eddyville, Iowa. It should be noted that the alleged offense occurred at 1:30 p.m.[2] in Marshall, Missouri. Eddyville is more than a five hour drive from Marshall, Missouri."

Defendant also filed a pre-trial motion under Rules 25.03 and 25.04 in which he requested the trial court to order the State to identify various types of witnesses and evidence and further requested the court to order the State to produce any records of oral or written statements it had taken from Defendant's alibi witnesses. The State denied it had an obligation to produce such statements except to the extent they were exculpatory. The trial court determined that Defendant had not shown a reasonable need for the statements, as he obviously already knew what these witnesses would say since he was calling them in his defense, and denied the motion to produce the statements under rule 25.04. The State eventually did produce the exculpatory portions of such statements to Defendant, but blacked out the other portions of the statements.

Just before trial, the State identified certain witnesses it might call as rebuttal witnesses to rebut Defendant's alibi. The State also indicated it might call a witness to impeach the credibility of certain defense alibi witnesses. However, the prosecutor took the position that he was not required to disclose the identity of the latter witness because that witness would only impeach the credibility of these alibi witnesses and would not rebut Defendant's alibi itself. Over defense counsel's objection, the trial court agreed that no disclosure of the impeachment witness was required, at least until the State determined whether to put that witness on the stand.

Defendant's alibi was that he had arrived in his mother's house near Eddyville, Iowa, during the early morning hours of May 29, 1992 (the day of the crime), and had stayed there for the entire weekend. He claimed he therefore could not have committed the crime in Marshall, Missouri at shortly after 3:00 p.m. on May 29, 1992.

Defendant did not testify, but his witnesses supported his alibi. Specifically, Defendant's grandmother said he had told her on May 28, 1992, the day before the crime, that he was going to visit his mother in Eddyville. Defendant's mother Jackie Tackitt testified that he arrived at her home at about 4:00 a.m. on May 29, 1992. She said that at about 7:00 a.m. that morning, her friend, Ms. Abernathy, came to the house and had coffee with her and her son, and then went to take a social psychology examination at nearby William Penn College in Oskaloosa, Iowa. Ms. Abernathy's testimony confirmed these facts.

Defendant's mother further testified that Defendant had spent from about 9:00 a.m. until right after lunch with his sister, Jessica, and Graham Jennings, a friend. She said he and his friend, Failor, had left his mother's house shortly before 1:00 p.m. and returned around 5:30 p.m. She said Defendant stayed in Eddyville, playing music and visiting with friends and family all weekend and did not return to Missouri until early on the morning of Monday, June 1, 1992. She recalled he had to be back on that day because he had a court date.

Various friends and other relatives of Defendant, whom he had endorsed as defense alibi witnesses, confirmed the above facts and testified as to various details about the weekend. The prosecutor was able to impeach these witnesses on some details of their testimony as to how they could be sure of the date when Defendant had visited. He did so in part by using information he had gathered after investigating inaccuracies he had noted in these witnesses' statements. It appeared at trial that defense counsel was fully aware

---

**2.** As noted above, the crime in fact occurred shortly after 3:00 p.m., not at 1:30 p.m.

of what the witnesses would testify to and that he was not surprised by the existence of these inaccuracies.

After Defendant rested, the State announced it would call Ms. Vos as its only rebuttal witness. Ms. Vos was the impeachment witness whom the State had mentioned prior to trial that it might want to call, but whom it had refused to identify. Over Defendant's renewed objection, the trial court permitted Ms. Vos to testify.

Ms. Vos testified that she was the registrar at William Penn College. Ms. Vos testified that Ms. Abernathy had taken social psychology in the Fall 1991 term, not in the Spring 1992 term, and that the Fall term had ended on December 19, 1991. She further testified that the last day of the Spring 1992 term had been May 7.

The jury deliberated for three hours before indicating that it was deadlocked. The judge read the jury the hammer instruction. One hour and fifteen minutes later the jury returned a verdict finding Defendant guilty of all charges. This appeal followed.

## II. *LEGAL ANALYSIS*

Defendant raises two issues on this appeal. Defendant's key argument is that the Court erred in permitting the State to call Rita Vos on rebuttal because under the "reciprocal discovery" rule recognized in *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the State was required to identify her in discovery as a witness who would be used to rebut Defendant's alibi, yet the State failed to do so. He also argues that the trial court committed reversible error in overruling his motion requesting the State to disclose all oral statements, in its possession, of endorsed defense alibi witnesses.

### A. *Right to Disclosure of Rita Vos as State Rebuttal Witnesses*

■ Prior to trial, the State identified four witnesses it might call to rebut Defendant's alibi. The State also informed the court that it might call another witness in rebuttal, but that this witness would not be used to rebut Defendant's alibi but rather would be used solely as:

[A]n impeachment witness of what some alibi witnesses may say. It has nothing to do with Shawn Evans, where he was or when he was there. But we believe that person is an important impeachment witness. And I have read the two Missouri cases on disclosure of alibi rebuttal, and I believe that witness is a person I do not have to disclose.

Based on this description of the latter witness' anticipated rebuttal testimony, the trial court overruled defense counsel's objection that *Wardius* required identification of this witness and ruled that the State would not need to disclose this witness to the defense prior to trial.

After Defendant rested, the State called Ms. Vos. As noted above, Ms. Vos testified that she was the registrar for William Penn College in Oskaloosa, Iowa. One of Defendant's alibi witnesses, Joanie Abernathy, had testified that she and Defendant's mother were with Defendant in his mother's kitchen at about 7:00 a.m. on the morning of May 29, 1992, the day the crime occurred. Ms. Abernathy said she remembered this date because it was the last day of the week and because it was the day she took her social psychology exam at William Penn College.

Ms. Vos testified that Ms. Abernathy took social psychology at William Penn College in the Fall 1991 term, not in the Spring 1992 term, and that the Fall term ended on December 19, 1991. She further testified that classes for the Spring 1992 term at William Penn College ended on May 7, 1992. This was 22 days prior to the day Ms. Abernathy claimed she took her social psychology exam.

The fundamental issue on appeal is whether Ms. Vos' identity was required to be disclosed under the reciprocal discovery rules required in *Wardius,* 412 U.S. at 474–76, 93 S.Ct. at 2211–13. The defendant in *Wardius* had been barred from introducing any evidence to support his alibi defense as a sanction for his failure to comply with Oregon's rule requiring a defendant to notify the prosecution of his intent to rely on an alibi and to give the State the names and addresses of any alibi witnesses. 412 U.S. at 471–72, 93 S.Ct. at 2210–11. The Supreme Court held that:

[T]he Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules [requiring the defendant to disclose alibi witnesses] unless reciprocal discovery rights are given to criminal defendants. Since the Oregon statute did not provide for reciprocal discovery, it was error for the court below to enforce it against petitioner, and his conviction must be reversed.

*Wardius*, 412 U.S. at 472, 93 S.Ct. at 2211.

■ Missouri recognizes that, if Defendant gives notice of an alibi defense, *Wardius* requires reciprocal disclosure by the State of witnesses who will rebut Defendant's alibi. Indeed, prior to trial of this case, and pursuant to *Wardius*, the State disclosed four witnesses whom it thought it might call for that very purpose.

While Defendant claims that *Wardius* also required disclosure of Ms. Vos' identity, the State contends otherwise. It states that there is an essential distinction between evidence which rebuts the defendant's alibi and evidence which simply impeaches aspects of an alibi witness' testimony, but does not directly refute the defendant's claim that he was not present at the scene of the crime.

The State alleges that Ms. Vos' testimony falls in the "mere impeachment" category of cases because she did not in any way refute Defendant's claim that he was in Iowa at the time of the crime in Marshall, Missouri on May 29, 1992. Rather, the State says Ms. Vos simply cast doubt on the accuracy of one of the bases on which Ms. Abernathy testified she recalled that she had seen Defendant in Iowa at 7:00 a.m. on the morning of May 29, 1992; the crime occurred shortly after 3:00 p.m. that afternoon in Marshall. Because Defendant's mother confirmed that Defendant had visited on the day Ms. Abernathy took her exam, Ms. Vos' testimony also tended to impeach the credibility of Defendant's mother. However, Ms. Vos' testimony did not address the issue whether Ms. Aber-

nathy had seen Defendant in his mother's kitchen that morning, nor did she have any information as to Defendant's whereabouts at the time of the crime.

The type of distinction which the State asks us to draw has been explicitly accepted by a number of Missouri cases. These cases have made it clear that they do *not* interpret *Wardius* to constitutionally require exclusion of witnesses who merely impeach an alibi witness' credibility, but do not actually impeach the defendant's alibi itself.

*State v. Simms*, 643 S.W.2d 87 (Mo.App. 1982), provides a good example of this approach. In *Simms*, the defendant gave notice of an alibi defense to the charge of robbery. His mother testified that he had stayed up with her from midnight to 6:00 a.m. the night of the crime and that she remembered the date in part because the defendant had protested at having to stay up all night because he had to go to work at Oak Hall the next morning.

Although the State had not identified any rebuttal alibi witnesses, it was permitted to call a payroll clerk to testify that the defendant had not worked at Oak Hall for almost three months prior to the crime, because:

> It is apparent that the rebuttal evidence was not aimed at rebutting the fact that Simms was with his mother at the time of the robbery, but rather impeached the mother's testimony that Simms was working at Oak Hall on September 1.

*Simms*, 643 S.W.2d at 90.

*State v. Roberts*, 622 S.W.2d 226 (Mo.App. 1981), used the same rationale to hold that *Wardius* did not require disclosure by the State that it would call a witness' employer to state that she had "clocked out" of work at 10:46 p.m. on the night of the crime, thereby impeaching her testimony that she had been with the defendant from 7:30 p.m. until past midnight on that evening. A similar approach has been taken by a number of other Missouri cases.[3]

---

**3.** *See, e.g., State v. Hutson,* 646 S.W.2d 822, 824 (Mo.App.1982) (State not obligated to reveal rebuttal witness who simply rebutted the claim that Defendant had not been drinking); *State v. Mitchell,* 622 S.W.2d 791, 797 (Mo.App.1981) (no duty to disclose witness who rebutted testi-

mony of defense investigator that he had not asked witness to identify Defendant as being at particular store on day of robbery); *State v. Toney,* 680 S.W.2d 268, 274 (Mo.App.1984) (accord).

Although the parties do not discuss the law in other jurisdictions, we have reviewed numerous cases from other states to determine whether they also recognize this distinction between evidence rebutting the defendant's alibi and evidence attacking the credibility of alibi witness testimony on issues other than the defendant's presence at the scene of the crime. We note that the federal courts generally have rejected the distinction between evidence which rebuts the defendant's alibi and evidence which impeaches defendant's alibi witnesses. *See, e.g., United States v. Myers,* 550 F.2d 1036 (5th Cir.1977). Indeed, *Myers* went so far as to say that, while reliance on such a distinction "falls short of bad faith," it thwarts the central purpose of reciprocal discovery—to avoid surprise. *Id.* at 1043. However, *Myers* was decided under Fed.R.Crim.P. 12.1. While Rule 12.1 is consistent with the principles set out in *Wardius,* it predates *Wardius* and the comments to the Rule do not indicate that it is to be coextensive with or is required by *Wardius.*[4]

While *Myers* has been followed by the Florida courts, *see, e.g., Hicks v. State,* 400 So.2d 955, 956 (Fla.1981), most other jurisdictions which have addressed this issue appear to have adopted the very distinction Missouri recognizes between impeachment of alibi witnesses and rebuttal of defendant's alibi.

*People v. Buono,* 121 Misc.2d 854, 469 N.Y.S.2d 311 (N.Y.Sup.1983), *aff'd,* 131 A.D.2d 981, 517 N.Y.S.2d 415 (1987), is particularly instructive. The defendant claimed, as his alibi, that he had been with Ms. Huested and other friends at a social club at the

time of a homicide, and she so testified at trial. The State then called a previously unidentified rebuttal witness who testified that Ms. Huested had previously told him that she was not at the social club the night of the homicide. The trial court found her reciprocal disclosure under *Wardius* had not been required because this evidence simply served to impeach her claim that she was at the social club and did not rebut the defendant's alibi that he had been in the social club at the time of the homicide.[5] By contrast, *Buono* found that *Wardius* had required the State to disclose a rebuttal witness who would have testified that the defendant was at a location other than the social club at a time shortly after the crime.

Here, as in the above cases, the rebuttal witness, Ms. Vos, simply impeached Ms. Abernathy's and Ms. Tackitt's testimony as to how they knew that they had seen Defendant in Iowa on the day of the robbery; the witness did not directly attack Defendant's alibi itself. Current Missouri precedent therefore requires us to hold that *Wardius* did not require the State to disclose Ms. Vos to Defendant.

Missouri precedent also supports a second argument as to why Ms. Vos' rebuttal of Ms. Abernathy's testimony is not the type of testimony for which *Wardius* required pretrial disclosure. These cases are based on the meaning of "alibi," which Missouri has defined solely to mean "that defendant claims he was at another and different place than that at which the alleged crime was committed." *State v. Miner,* 639 S.W.2d 569, 571

---

4. Fed.R.Crim.P. 12.1 requires reciprocal disclosure by the government of "the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense *and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses,*" (emphasis added). Missouri does not have a rule comparable to Fed.R.Crim.P. 12.1.

5. *See also State v. Parker,* 421 So.2d 834 (La. 1982), *cert. denied,* 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983) (use of timecard to rebut claim that the defendant had been dropping witness off at work at time of robbery simply refuted credibility; it did not place the defen-

dant at scene of crime and thus disclosure was not required); *People v. Ortiz,* 133 A.D.2d 853, 520 N.Y.S.2d 215, 217 (1987) (refutation of defense testimony that victim had not previously visited apartment where crimes occurred was not rebuttal of alibi, but rather simply discredited credibility of witness); *People v. Tuck,* 147 A.D.2d 899, 537 N.Y.S.2d 355 (1989), *aff'd,* 75 N.Y.2d 778, 552 N.Y.S.2d 85, 551 N.E.2d 578 (1989) (testimony offered to impeach credibility of the defendant is not alibi testimony); *People v. Haisha,* 111 Mich.App. 165, 314 N.W.2d 465, 467–68 (1981) (State was not required to disclose witness who would impeach defense witness' testimony that she had been home with the defendant at time of crime).

(Mo.1982).[6] Whether a witness is an alibi witness thus depends on whether his or her testimony serves to place the defendant at a place other than that at which the crime was committed at the time that the crime was committed. Numerous Missouri cases hold that if a witness simply provides testimony as to what the defendant was doing or where he was at a time prior to the crime, the witness should not be considered a true alibi witness at all because, even if believed, the witness' testimony does not show that the defendant was not present at the scene of the crime.[7]

*Miner* provides a good example of this approach. In *Miner*, the defendant notified the State that Ms. Stricklen would provide him with an alibi for the killing of the victim at a junkyard in Union, Missouri at approximately 6:00 a.m. on June 1, 1980. Ms. Stricklen testified that he had been with her from 2:00 p.m. on May 31 until 1:00 a.m. on June 1. The State then called a previously unidentified rebuttal witness, Ms. Coad, who testified that the defendant had been with her, not with Ms. Stricklen, during the latter time period. *Miner* held that *Wardius* and similar cases were not applicable for:

> The theory of alibi is that the fact of defendant's presence elsewhere is essentially inconsistent with his presence at the place where the offense was committed; therefore, he could not have personally participated. Kathy Stricklen's testimony did not operate logically to negate defendant's presence at the time and place of the offense ... Therefore, Bonnie Coad's testimony did not rebut an actual alibi defense, as there was none, but she merely

refuted defendant's evidence and corroborated the state's case-in-chief.

639 S.W.2d at 571–72 (citations omitted).

A similar result was reached by this Court in *Lutjen*, 661 S.W.2d at 849. The defendant was accused of burglarizing the victim's home at 6:30 p.m. on September 10, 1982. The defendant notified the prosecution of an alibi defense. He claimed that he had worked in California, Missouri the morning of the crime from 8:00 a.m. until 11:00 a.m. and then attended a fair in Cole Camp from about 2:30 p.m. until 7:15 p.m.

The State did not give reciprocal disclosure of any rebuttal witnesses prior to trial. However, at trial, it called a witness who testified that he, the defendant and two companions drove by his home south of Sedalia and waved at him at about 10:00 a.m. on the morning of the crime. *Lutjen* held that this testimony simply contradicted the defendant's testimony as to where he was at 10:00 a.m., many hours before the crime, and that this:

> does not rebut the alibi that the defendant was at a fair some eight hours later when the crime was committed, but merely impeaches the testimony of the defendant that he was in the city of California at that hour. The testimony bore on the credibility of defendant. It was within the discretion of the trial court to receive the testimony.

*Lutjen*, 661 S.W.2d at 849. Again, other states take the same approach as that taken in Missouri. *See, e.g., People v. Gillman*, 66 Mich.App. 419, 239 N.W.2d 396 (1976) (witness who simply testified to her presence with the defendant at time before time of crime was not true alibi witness and was not required to be disclosed under *Wardius* ).[8]

---

**6.** *See also State v. Pruett*, 425 S.W.2d 116, 118 (Mo.), *cert. denied*, 393 U.S. 954, 89 S.Ct. 380, 21 L.Ed.2d 365 (1968) (accord); *State v. Lutjen*, 661 S.W.2d 845, 849 (Mo.App.1983) ("The defense of alibi, of course, asserts that the accused was, at the time, at a place other than where the crime was committed and so could not have been the perpetrator"). Other states utilize a similar definition. *See, e.g., Brooks v. State*, 80 Md.App. 118, 560 A.2d 56, 58 (1989) (alibi witnesses are those who show "that the defendant was not present at the time, place and date of the offense"); *State v. Fechter*, 397 N.W.2d 711, 712–13 (Iowa 1986) (accord).

**7.** As is evident, the mere fact that a defendant has listed a witness as an alibi witness is not dispositive; the witness is only an alibi witness if the witness in fact provides the defendant with an alibi for the crime. *See People v. Gillman*, 66 Mich.App. 419, 239 N.W.2d 396 (1976).

**8.** *Accord People v. Muniz*, 622 P.2d 100, 102–03 (Colo.App.1980) (state was not required to disclose rebuttal testimony that defendant had been with witness at 1:00 a.m., thereby impeaching credibility of the defendant and two other witnesses that he had been with them at that time, as crime did not occur until between 3:00 a.m. and 5:00 a.m. and the defendant only gave notice

This case falls within the rationale stated in *Miner* and *Lutjen*. Ms. Abernathy testified that she saw Defendant at his mother's home near Eddyville, Iowa at about 7:00 a.m. on the morning of May 29, 1992. Eddyville is about 4 to 5 hours from Marshall, Missouri. The burglary took place in Marshall between 3:00 and 3:30 p.m. that afternoon. Even had Ms. Abernathy been with Defendant in Iowa at 7:00 a.m., he could have driven to Marshall in time to commit the crime at 3:30 p.m. In fact, Defendant's own interrogatory answers say that his alibi witnesses "were with the defendant from 11:00 a.m. to 6:00 p.m. on 29 May 92 in Eddyville, Iowa." As noted, Ms. Abernathy testified to his presence in Iowa at 7:00 a.m., not between 11:00 a.m. and 6:00 p.m.

In these circumstances, we hold that it was not error for the State to fail to disclose Ms. Vos' identity prior to trial, for she did not fall within the definition of an alibi witness under *Wardius*. Her testimony concerned Defendant's location at a time prior to the crime, and even if she were believed, he still would have had time to return to Missouri and commit the crime. In addition, Ms. Vos' testimony simply discredited the basis on which Ms. Abernathy based her claim that she had seen Defendant in Eddyville, Iowa on the morning of her social psychology exam. It did not address whether Defendant had in fact been in Iowa on that date or whether he had been present at the scene of the crime.

## B. *Right to Discovery of Oral Statements of Defense Witnesses*

Defendant also raises the issue whether the trial court abused its discretion in refusing to grant his motion under Rules 25.03 and 25.04 for production of "oral and/or written electronically recorded statements from defense witnesses" whom Defendant had disclosed he would call to support his alibi that he was in Iowa at the time the crime was committed in Marshall, Missouri. Defendant argued in support of his motion that "[i]t is clear that the state intends to use this information to impeach defense witnesses. Impeachment evidence is clearly discoverable."

▌ Rules 25.03 and 25.04 serve very different purposes. In relevant part, Rule 25.03 *requires* disclosure of oral or written statements of the defendant or of a codefendant and of exculpatory witnesses or witnesses whom the State intends to call at trial.[9] Defendant does not claim on appeal in his Points Relied On, however, that the trial court erred in failing to order disclosure of these statements under Rule 25.03. He complains only that it was unreasonable for the trial court not to order the State to reveal statements it took from his alibi witnesses under Rule 25.04 as a *quid pro quo* for the trial court's earlier order requiring Defendant to reveal to the State the social security number, relationship to Defendant and date of birth of these same alibi witnesses.[10]

---

of intent to rely on an alibi for that time period); *State v. Fechter*, 397 N.W.2d 711 (Iowa 1986) (accord). Of course, just as the state is not required to disclose rebuttal testimony discrediting witnesses who are not true alibi witnesses, some courts have noted that, if a witness does not provide true alibi testimony, the defendant is not required to disclose the identity of that witness under the reciprocal discovery rules. *See State v. Horenberger*, 119 Wis.2d 237, 349 N.W.2d 692, 696 (1984).

9. At trial, defense counsel admitted the statements which he sought were *not* within the compass of Rule 25.03 unless they were exculpatory in nature. The State eventually disclosed all potentially exculpatory aspects of these statements to Defendant prior to trial. Although Defendant complained below that this disclosure was untimely, he does *not* raise this issue on appeal nor does the transcript reveal any prejudice which could have arisen from the timing of

this disclosure. It therefore was not error to fail to grant Defendant's motion on the basis that the statements contained exculpatory information.

10. His Point Relied On states in relevant part:

I. The Trial Court Erred and Abused its Discretion in Denying Mr. Evans' Request for Discovery and Disclosure of Evidence the State Planned to Use in Rebutting His Alibi Defense When the Trial Court:
   A. Overruled Mr. Evans' First Motion for Supplemental Discovery, under Rule 25.04, for Disclosure of Oral Statements Made by Endorsed Defense Alibi Witnesses to Police Officer Tom Bolling; . . . .

   . . . .

In That Mr. Evans Was Entitled to Full Disclosure of the Evidence the State Intended to Use to Rebut His Alibi Defense When He Was Required by Rule 25.05(A)(5) to Disclose the Time and Place of the Alibi and the Names and

Rule 25.04 gives the trial court the discretion to allow the defendant to conduct additional discovery, upon motion, and directs:

> If the court finds the request [for additional discovery] to be reasonable, the court shall order the state to disclose to the defendant that material and information requested which is found by the court to be relevant and material to the defendant's case.

**Rule 25.04(A)** (emphasis added).

While we agree with Defendant that the trial court would have been within its authority in ordering production of such statements under Rule 25.04, we do not agree that denial of such discovery was unreasonable simply because the trial court had previously required Defendant to reveal minimal descriptive information about his defense witnesses to assist the State in identifying them. The information Defendant sought from the State was much more extensive than the information he had provided to the State.

Moreover, as the trial court noted in denying Defendant's motion, Defendant was already aware of the identity of his own alibi witnesses and defense investigators had already talked with them. Each of these witnesses was friendly to Defendant and, indeed, had agreed to testify for the defense. In these circumstances, the trial court did not act unreasonably in finding that this was not a case in which to order an exception to the general rule that witness statements, particularly to the extent they will only be used by the State for impeachment purposes, are not discoverable. *See, e.g., State v. Willis,* 706 S.W.2d 265, 268 (Mo.App.1986).

■ Defendant also argues that his witnesses' statements were discoverable under Rule 25.04 because the statements constituted rebuttal of defense alibi witnesses and hence were constitutionally *required* to be disclosed under *Wardius,* 412 U.S. at 476, 93 S.Ct. at 2212–13. However, none of the statements rebutted Defendant's alibi that he was not present at the scene of the crime because he was in Iowa when it was committed. As he had promised, the prosecutor solely used the statements to impeach the credibility of some of Defendant's alibi witnesses as to the bases on which they recalled when they had seen Defendant and as to the details of their description of their activities with Defendant the weekend of the crime. For the reasons discussed above, these statements do not fall within the scope of *Wardius* and due process did not require their disclosure.

For the reasons stated above, we affirm the conviction of Defendant.

All concur.

Addresses of Prospective Alibi Witnesses, and the Trial Court Ordered Mr. Evans, Pursuant to Rule 25.06, to Disclose the Social Security Numbers, Dates of Birth, and Relationship to Mr. Evans of His Alibi Witnesses.